Syllabus.

CHARLES FOWLER, Assignee,

v.

CLARINDA BLACK et al.

*Filed at Ottawa January 22, 1891.*

1. CONVEYANCES—*rule of construction—oral evidence in aid.* In giving a construction to a deed, the court is confined to the terms of the instrument itself, the object being to ascertain the intention of the parties as expressed by the language used, and not the intention which may, at the time, have existed in their minds.

2. Where the language of a deed is otherwise obscure or doubtful, resort may be had to oral evidence of the circumstances surrounding the parties at the time of the execution of the instrument; but this can never be done for the purpose of contradicting or varying the language actually employed, but merely to enable the court to view the instrument from the standpoint of the parties who executed it, and be thereby better enabled to determine the sense in which the words used were intended to be understood.

3. Where there is no ambiguity in the terms used, or when the language of the instrument has a settled legal meaning, the instrument itself is the only criterion of the intention of the parties, and its construction is not open to oral evidence.

4. SAME—*of the estate conveyed—whether in fee, or for life only, with remainder over—the rule in Shelly's case.* Husband and wife, by their deed, granted and conveyed to their son the land on which they resided, the grant to take effect upon their death, "to have and to hold the said remainder unto said party of the second part and his assigns, for and during the natural life of said party of the second part, and upon his death, then unto his heirs and their assigns forever." The deed then provided : "It being the true intent and meaning of this indenture to reserve a life estate in the above described premises to said parties of the first part, and to the survivor of them, and to convey the remainder upon the death of such survivor to said party of the second part, to have and to hold only during his natural life, and upon the death of said party of the second part said premises to be held in fee simple by his heirs and their assigns forever :" *Held,* that the son, the grantee, took the remainder in fee simple, and not merely a life estate therein.

5. Where a devise or grant is made to one and his heirs, a conclusive presumption of law will arise that the testator or grantor intended to use the words "heirs" as a word of limitation and not of purchase, and neither the express declaration that the ancestor shall have an estate

136 363
144 559
145 304

136 363
159 303

136 363
156 68
158 388
46a 395

136 363
172 524

136 363
174 270

136 363
180 38

136 363
d182 314

136 363
187 ¹602
d90a ³603

136 363
f192 ⁶258

136 363
99a ⁶ 96

136 363
198 ⁵522

136 363
206 ³ 62

136 363
110a ²386

136 363
212 ²163

for his life, and no longer, nor that he shall have only an estate for life in the premises, and after his decease it shall go to the heirs of his body, and in default of such heirs vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of the testator or grantor, nor that the ancestor shall be a tenant for his life, and no longer, and that it shall not be in his power to sell, dispose of or make away with any part of the premises, will change the word "heirs" into a word of purchase.

6. MISTAKE OF LAW—*whether equity will interpose.* A mistake in the legal meaning of words used in a deed or other contract, or in the proper construction of the words employed, or as to the legal effect of those words, where no fraud, undue influence or imposition has been used, will afford no equitable ground for a reformation of the instrument, such mistake being one of law. It is for mistakes of fact, alone, that contracts may be reformed in equity. So if the word "heirs" is used in a deed, by mistake, for the word "children," it will not justify a reformation of such deed.

APPEAL from the Circuit Court of LaSalle county; the Hon. GEORGE W. STIPP, Judge, presiding.

This was a suit in chancery, brought in the Circuit Court of LaSalle county, by Chase Fowler, assignee of Alonzo S. Black, an insolvent, to obtain a construction of a certain deed executed by Samuel Black and Clarinda Black, his wife, to Alonzo S. Black, purporting to convey to the grantee an estate in certain lands therein described, and also to remove a cloud from the title to said land. The bill alleges that Alonzo S. Black, on the 13th day of September, 1889, executed and delivered to the complainant a deed of assignment of all his property and estate, in pursuance of the provisions of the statute in relation to voluntary assignments for the benefit of creditors, and annexed to said assignment an inventory of his property and a list of his creditors, and that said assignment, inventory and list of creditors were thereupon duly filed and recorded in the County Court and also in the office of the recorder of LaSalle county; that at the time of the execution of said assignment, Alonzo S. Black was the owner in fee, subject to certain mortgages, of certain lands described in his inventory,

and that he was also the owner of an interest in the west half of the south-east quarter of section 6, township 34, north, of range 3, east of the 3d principal meridian, in said county, but that he wholly refused to include his interest in that tract of land in his said inventory; that at the time of the execution of said assignment, he was in possession of said tract and has ever since been in possession of and residing on the same; that he acquired all the right, title and interest which he has therein by and through a certain deed, bearing date June 30, 1875, executed and delivered to him by Samuel Black, who was then the owner of said land in fee, and Clarinda Black, his wife, said deed being as follows:

"This indenture, made this thirtieth day of June, in the year of our Lord one thousand eight hundred and seventy-five, between Samuel Black, and Clarinda Black, his wife, of the county of LaSalle and State of Illinois, parties of the first part, and Alonzo S. Black, of the same county and State, party of the second part:

"*Witnesseth*, that said parties of the first part, for and in consideration of $10,000 to them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey, unto the said party of the second part, the remainder of all of the following described premises situated in the county and State aforesaid, to-wit: The west half of the south-east quarter of section six (6), in township thirty-four (34), north, range three (3), east of the third principal meridian, when it shall happen upon the death of the parties of the first part or the survivor of them,—to have and to hold the said remainder unto said party of the second part and his assigns for and during the natural life of said party of the second part, and upon his death, then unto his heirs and their assigns forever, it being the true intent and meaning of this indenture to reserve a life estate in the above described premises to said parties of the first part

and the survivor of them, and to convey the remainder, upon the death of such survivor, to the said party of the second part, to have and to hold only during his natural life, and upon the death of said party of the second part said premises to be held in fee simple by his heirs and their assigns forever.

"In witness whereof, the said parties of the first part have hereto set their hands and seals the day and year first above written.

SAMUEL BLACK,  [Seal.]

CLARINDA BLACK.  [Seal.]"

The bill alleges that said deed was duly acknowledged and recorded; that at the time of the execution of said assignment, said insolvent was the owner of all the right, title and interest conveyed to him by said deed, and that by said assignment all of said right, title and interest were conveyed to the complainant in trust for the uses and purposes for which said assignment was executed; that sometime in the year 1886 Samuel Black died, leaving surviving him his widow, Clarinda Black, who is now living, and is of the age of about seventy-eight years; that the property included in said inventory will be insufficient to pay the debts of said insolvent, and that it will be necessary to sell for that purpose the interest of said insolvent in said tract of land; that the language of said deed is indefinite and uncertain and is capable of different constructions or meanings, so that the complainant is unable to determine what interest in said land said insolvent acquired by means of said deed; that the complainant is advised and avers the fact to be, that said insolvent, at the time of the execution of said assignment, was the owner of said land in fee, subject only to the life estate of Clarinda Black, but that said insolvent, and William G. Black and Samuel A. Black, who are the sons and only children of said insolvent, and other persons, claim and insist that by said deed, said insolvent acquired only an estate for his own life, commencing at the death of Clarinda Black, and that by said assignment the com-

plainant acquired only such life estate; that on account of
the uncertainty in regard of said interest, the County Court
of LaSalle county entered an order directing the complainant
to file a bill in chancery at the expense of said estate for the
purpose of determining the interest of said insolvent, and of
the complainant as assignee of said insolvent, in said tract of
land, and for the purpose of removing any cloud there might
be upon the complainant's said title; that said land is good
farming land, under good cultivation and having lasting and
valuable improvements thereon, and is worth from $60 to $75
per acre, but that owing to the uncertainty in regard to the
title acquired through said deed and said assignment, it will
be almost impossible for the complainant to obtain a purchaser
of his interest in said land, and for that reason the complain-
ant will be wholly unable to properly execute the trusts re-
posed in him as assignee of said insolvent, unless said deed
shall be first construed and his interest in said land determined
and defined.

The bill further alleges that, on the 12th day of February,
1889, William G. Black, one of the sons of said insolvent,
together with his wife, executed and delivered to Samuel A.
Black, the other of said sons, an instrument in writing, but
not under seal, purporting, on its face, to be a quit-claim deed
of said tract of land, and expressing a consideration of $2600;
that said instrument was acknowledged by William G. Black
and wife and recorded in the office of the recorder of said
county; that at the time of the execution of said instrument,
neither William G. Black nor his wife had any title or interest
in or to said land, but that said instrument, though not oper-
ative as a conveyance for want of a seal, is a cloud upon the
complainant's title, and ought to be declared void and set
aside, to the end that the complainant may be able to more
fully and properly execute the trust reposed in him by said
deed of assignment.

The bill makes Alonzo S. Black, Clarinda Black, William G. Black and Samuel A. Black, and certain other parties who, as is alleged, claim some interest in said land, parties defendant, and prays that the proper construction be given to said deed, and that the right, title and interest thereby conveyed to Alonzo S. Black be ascertained and defined, and that said instrument executed by William G. Black and wife to Samuel A. Black be set aside, and also a general prayer for relief.

Clarinda Black, William G. Black and Samuel A. Black appeared and answered, and also filed their cross-bill in which they alleged, in substance, that Samuel Black, in his lifetime, owned said tract of land, and that he and Clarinda Black, his wife, resided upon and occupied the same as their homestead, from the time of its purchase in 1849, up to the time of the death of Samuel Black, which took place in October, 1886, and that Clarinda Black, his widow, still occupies said land as her homestead ; that Samuel Black and Clarinda Black had, at the time of making the deed in controversy, one son and two daughters living, and one granddaughter, the daughter of a deceased son ; that Alonzo S. Black had always resided with his parents, and still resides with his mother ; that at the time said deed was executed, said daughters had married and left home, and that said Alonzo S. Black and his wife and their two sons, William G. and Samuel A. Black, were residing with said Samuel and Clarinda Black ; that on or about the 30th day of June, 1875, the said Samuel Black and Clarinda Black, his wife, went to a conveyancer and instructed him to prepare a deed to be executed by them and each of them, in and by which they should reserve the said real estate to them and to the survivor of them for life, and convey to the said Alonzo S. Black a life estate only in said land, said life estate to begin on the death of said Samuel Black and Clarinda Black, and to convey the said real estate in fee simple to the said children of Alonzo S. Black at his death ; that under the instructions so given, the deed in controversy was drawn, and

the grantors being aged and not versed in the use of the language necessary to complete and effectuate their intentions, well supposed and believed that said deed would give entire effect to their intentions as above set forth; that Samuel A. Black was then an infant of the age of eight years and totally unacquainted with the proper wording of deeds conveying real estate; that said assignee insists that said deed conveyed no title whatever to said William G. and Samuel A. Black, but that it conveyed to Alonzo S. Black the title to said land in fee, subject only to a life estate in the grantors; that if said deed did not by its terms and language effectuate the intentions of the grantors as above set forth, the failure to make said deed convey in apt terms the fee simple title to William G. Black and Samuel A. Black was through the mistake of the conveyancer in not making use of apt words to express the intent and desire of said grantors, and as said grantors directed and instructed said conveyancer to do; that William G. Black and wife have parted with all their interest in said land to Samuel A. Black, and that neither they nor Samuel A. Black have otherwise conveyed or parted with their interest acquired under and by virtue of the deed set forth in the original bill, and that Alonzo S. Black has not parted with or conveyed his interest acquired under said deed except such interest as he may have conveyed by said deed of assignment.

The cross-bill prays that if the court should find that said deed does not effectuate the intention of said grantors so as to give only a life estate to Alonzo S. Black, to begin after the death of Clarinda Black, and to give the title in fee to Samuel A. Black and William G. Black, that it may be so reformed as to give effect to that intention, and also a general prayer for relief.

Said assignee demurred to said cross-bill for want of equity, and upon certain other grounds specially alleged, which demurrer was overruled by the court, and said assignee having elected to abide by his demurrer, the cross-bill was taken pro

24—136 ILL.

confesso as against him, and a hearing was thereupon had as to the original bill on pleadings and proofs. By its decree the court found the true construction of the deed set out in the original bill to be, that said Alonzo S. Black thereby took a remainder for his life, contingent upon his surviving the said grantors and each of them, and that upon the death of said Alonzo S. Black, the said deed grants a fee simple in said land to those persons who, at his death, should be his heirs, said heirs taking as purchasers from said Samuel Black, and that said Alonzo S. Black had no present interest in said land. The court further found that the consideration of said deed though expressed to be $10,000, was merely nominal, and that nothing was paid to said Samuel Black for said land, but that said deed was a gift; that the word "heirs" as used in said deed was, by mistake of the scrivener, inserted therein instead of "children;" that Samuel Black, the grantor in said deed, instructed the conveyancer who drafted the same to so draft said deed as to reserve a life estate to the grantors therein and the survivor of them, and then give a life estate only to Alonzo S. Black, to commence at the death of the survivor of said grantors, and on the death of said Alonzo S. Black, to convey the fee simple in said land to his children, their heirs and assigns forever, but that said conveyancer neglected to use the word "children" as directed by said grantor, and instead thereof used the word "heirs" in said deed; that while it was the intention of said grantor to convey the fee simple title to William G. Black and Samuel A. Black, the children of Alonzo S. Black as aforesaid, the language employed in said deed to convey said lands is ambiguous, and that the deed should therefore be so reformed as to express in apt words the intention of said grantor free from all ambiguity. It was thereupon ordered, adjudged and decreed that Alonzo S. Black has no present interest in said land; that the word "heirs" as used in said deed, was intended to mean the children of Alonzo S. Black, viz, William G. and Samuel A. Black, and that said

children took the fee simple title to said land by purchase, the enjoyment of the same to commence at the termination of the intervening life estate set forth in the deed. And it was further decreed that said deed be so reformed that in lieu of the word "heirs," wherever the same occurs in said deed, the word "children" be substituted therefor, and it was ordered that the assignee pay the costs of the proceeding, to be taxed. From that decree said assignee has appealed to this court.

Mr. J. B. RICE, for the appellant:

The word "heirs" is used in the deed in its strict legal sense, and there is nothing to indicate that the word "children" was intended in its place.

The word "heirs," as used, is a word of limitation, and not of purchase. *Carpenter* v. *Van Olinder,* 127 Ill. 42; *Baker* v. *Scott,* 62 id. 87; *Pervin* v. *Blake,* 4 Burr. 2579; 1 Preston on Estates, 362, 363; *Hageman* v. *Hageman,* 129 Ill. 168; *Riggin* v. *Love,* 72 id. 553.

A court of equity will not relieve against mistakes of law. *Goltra* v. *Sanasack,* 53 Ill. 458; *Gordere* v. *Downing,* 18 id. 492; *Broadwell* v. *Broadwell,* 1 Gilm. 599; Story's Eq. Jur. secs. 113, 114, 116.

Mr. HENRY GUNN, and Mr. M. N. ARMSTRONG, for the appellees:

A mistake of law, or of the legal effect of words used in a contract, is a ground for relief, in equity. Kerr on Fraud and Mistake, 418, 419, 421; *Camby* v. *Marcy,* 13 Gray, 373; *Gillespie* v. *Moore,* 2 Johns. Ch. 596; *Evants* v. *Strode,* 38 Am. Dec. 744; *Clayton* v. *Forest,* 10 Ohio St. 544; *McNaughton* v. *Partridge,* 11 Ohio, 223; *Cooke* v. *Husbands,* 11 Md. 492; *McMillan* v. *Paper Co.* 29 N. J. Eq. 210; *Benson* v. *Markoe,* 37 Minn. 816; 2 Pomeroy's Eq. Jur. secs. 842, 847; *Keith* v. *Globe Ins. Co.* 52 Ill. 518; *Mills* v. *Lockwood,* 42 id. 118; *Railroad Co.* v. *Hay,* 119 id. 494; *Pool* v. *Docker,* 92 id. 501;

*Lansing* v. *Carpenter,* 48 N. Y. 411; *Insurance Co.* v. *Hudson,* 107 Mass. 290.

In construing deeds and wills the intention of the parties governs. *Pool* v. *Blakie,* 53 Ill. 502; *Miller* v. *Price,* 42 id. 404; *Hadden* v. *Shoutz,* 15 id. 581; *Batavia Manf. Co.* v. *Newton,* 91 id. 239; *Belslay* v. *Engel,* 107 id. 182.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The record in this case presents two principal questions: 1. Whether, by a proper construction of the deed of June 30, 1875, from Samuel Black and wife to Alonzo S. Black, as the same was executed, the children of Alonzo S. Black can be held to have taken the remainder in the land conveyed, after the preceding life estates, in fee, as purchasers. 2. If such construction is inadmissible whether the case made by the pleadings and proofs warranted the court in decreeing the reformation of said deed in such manner as to give it that effect.

It is clear that these two questions depend upon quite different considerations and must therefore be considered separately. The first calls for a construction and a determination of the legal effect of the language which the parties actually employed in the instrument as the same was executed by them, and the second rests upon the allegation that by mistake words not intended were inserted in the instrument, and, consequently, that the real intention of the parties was not expressed.

In giving construction to the deed we are necessarily confined to the terms of the instrument itself, the object being to ascertain the intention of the parties as expressed by the language used, and not the intention which may at the time have existed in their minds. True, where the language is otherwise obscure or doubtful, resort may be had to oral evidence of the circumstances surrounding the parties at the time the instrument was executed, but this can never be done for the purpose of contradicting, or varying the language actually employed,

but merely to enable the court to view the instrument from the stand-point of the parties who executed it, and be thereby better enabled to determine the sense in which the words used were intended to be understood. This principle excluded parol evidence contradictory of the writing itself, even though such evidence might clearly show that the real intention of the parties was at variance with the particular intention expressed in the written instrument. And where there is no ambiguity in the terms used, or where the language of the instrument has a settled legal meaning, the instrument itself is the only criterion of the intention of the parties, and its construction is not open to oral evidence. 1 Chitty on Cont. (11th Am. Ed.) 140; 2 Pars. on Cont. 551; 1 Addison on Cont. 182.

We allude to these elementary principles because counsel, in seeking to construe the deed, seem, to some extent at least, to rely upon the evidence tending to show that the actual intention of the grantors was different from that expressed by the language of the deed, and that by mistake of the scrivener, words were employed which failed to give proper expression to their intention. Whatever may be the force of that evidence as bearing upon the issues made by the cross-bill, it can not be considered in giving construction to the deed as actually executed.

The further circumstance is relied upon that Alonzo S. Black and his two sons had always resided with the grantors, and that said grantors had a special fondness and affection for their said grandsons. The execution of the deed is shown to have been without consideration, and was in fact a gift from the grantors to the grantee, and while the circumstance here alluded to was doubtless sufficient to furnish to the grantors a motive for making their grandsons the direct objects of their bounty, it imposed upon them no obligation to do so, and furnishes no explanation of what they did, and we are therefore unable to see how it can be resorted to as giving

character to their act in making the conveyance, or aid in the ascertainment of the intention expressed in the deed.

Recurring then to the deed itself, we are of the opinion that, under the rules of law now firmly established in this State, said deed must be held to be a conveyance to Alonzo S. Black of the land therein described in fee simple, subject only to the life estates of the grantors which were excepted out of the conveyance and reserved to them. The parties to the deed, as therein named, are Samuel Black and Clarinda Black, his wife, parties of the first part, and Alonzo S. Black, party of the second part. The grant is to "the said party of the second part the remainder of all the following described premises, (describing the land in controversy), when it shall happen, upon the death of the parties of the first part or the survivor of them: To have and to hold the said remainder, unto said party of the second part and his assigns, for and during the natural life of said party of the second part, and upon his death then unto his heirs and their assigns forever; It being the true intent and meaning of this indenture to reserve a life estate in the above described premises to said parties of the first part and the survivor of them, and to convey the remainder upon the death of such survivor to said party of the second part, to have and to hold only during his natural life, and upon the death of said party of the second part, said premises to be held in fee simple by his heirs and their assigns forever."

It will thus be seen that the grant is in terms to Alonzo S. Black and his heirs. There is nothing in the deed which can be held, either expressly or by implication, to limit or qualify the word "heirs," or to give to it any other than its ordinary legal signification, viz, those persons, whoever they may be, upon whom the law, at the death of the ancestor, would cast the inheritance, thus including all possible heirs, to take in succession from generation to generation, under the name of heirs of the ancestor. Under the rule of law known as the Rule in Shelly's Case, which is in force in this State, the word

"heirs," when thus used, must be held to be a word of limitation and not of purchase. This rule and its application have been so fully and elaborately considered and illustrated by us in cases heretofore decided, as to require but little discussion here. *Baker* v. *Scott,* 62 Ill. 86; *Carpenter* v. *Van Olinder,* 127 id. 42; *Hageman* v. *Hageman,* 129 id. 164.

This rule is said to be a rule of property which overrides even the expressed intention of the testator or grantor that it shall not operate, or which rather raises a conclusive presumption that, where a devise or grant is made to a man and his heirs, the testator or grantor intends to use the word "heirs" as a word of limitation and not of purchase. Thus, in the language of Preston on Estates, quoted and adopted by us in *Carpenter* v. *Van Olinder, supra:* "Neither the express declaration, first, that the ancestor shall have an estate for his life, and no longer; nor, secondly, that he shall have only an estate for life in the premises, and after his decease it shall go to his heirs of his body, and, in default of such heirs, vest in the person next in remainder, and that the ancestor shall have no power to defeat the intention of the testator; nor, thirdly, that the ancestor shall be tenant for his life, and no longer, and that it shall not be in his power to sell, dispose or make away with any part of the premises, will change the word 'heirs' into a word of purchase." It thus appears that in this case, the application of the rule is in no way affected by the declaration in the deed that it was the true intent and meaning of said instrument, that the party of the second part should have and hold only during his natural life, and that upon his death, said premises should be held in fee simple by his heirs. This declaration was wholly ineffectual to make the word "heirs" a word of purchase.

It may be admitted that if it had appeared from the terms of the deed that said word was used as a mere designation of the sons of Alonzo S. Black, the grantee, or if in any way a new or different import had been given to it by superadded

words varying its sense and operation, a different conclusion might follow. *Carpenter* v. *Van Olinder, supra.* Such, however, is not the case. The deed contains no superadded words of limitation, nor is there anything on the face of the instrument having the least tendency to show that the word was intended as a mere designation of the grantee's sons.

But even if we were to look at the evidence outside of the deed, we are of the opinion that no different result would follow. No person who was present at the time the deed was executed, or who could speak as to the actual intention of the grantors, was called or testified as a witness, and the only evidence apart from the deed of what took place at the time, or bearing upon the question of the intention of the grantors, is what is furnished by the allegations of the cross-bill, as the same are admitted by the demurrer and afterward taken pro confesso as against the assignee for want of an answer. But it nowhere appears from the allegations of the cross-bill that the word "heirs" was used in the deed as a mere designation of the two sons of Alonzo S. Black, but rather the contrary, it being alleged, in substance, that the word was inserted in the deed by the scrivener by mistake, and that by reason of such mistake the deed failed to convey the remainder in said land in fee to said two sons as the grantors intended.

The question remains whether the allegations of the cross-bill, taken as true, warranted the court below in reforming the deed. It sufficiently appears from said allegations that the grantors in said deed intended to reserve to themselves and the survivor of them a life estate in said land, and to convey to Alonzo S. Black a life estate therein, to commence in possession at the death of the survivor of said grantors, with remainder in fee to Samuel A. and William G. Black. The case then made is, in substance, that said grantors, with the foregoing intention, went to a conveyancer and instructed him to prepare such a deed as would carry their said intention into effect; that under such instructions the deed in question was

drawn, and they, being aged and not versed in the use of the language necessary to complete and effectuate their intention, supposed and believed that said deed would accomplish that result; that said assignee now insists that said deed conveyed no title to Samuel A. and William G. Black, but that it conveyed the fee to Alonzo S. Black, subject only to the life estates of the grantors; that if said deed does not carry into effect the intention of said grantors, the failure to make it convey the fee simple title to Samuel A. and William G. Black was through the mistake of said conveyancer in not using apt words to express the intent and desire of the grantors, as they directed and instructed him to do. The mistake now insisted upon, though not specifically stated in the cross-bill, consisted in the use of the word "heirs" instead of "children," and the court decreed the reformation of the deed by substituting the word "children" for the word "heirs" wherever it occurs in the instrument.

There is no pretense that said grantors, at the time they executed said deed, were not fully aware of its terms and language, or that they were in any way deceived, misled or otherwise imposed upon, or subjected to any undue or improper influence. It is not claimed that they did not read the deed before executing it, and the legal presumption that they did so must therefore prevail. It must be assumed then as a fact as to which there can be no dispute, that the grantors, when they executed the deed, knew that the word "heirs" was used and that the word "children" was not used. Nor is it claimed that the conveyancer or any other person gave them any advice as to the legal effect of the word thus employed, or as to whether the deed would give effect to their intentions or not.

It is clear then that the mistake complained of is not a mistake as to any fact, but simply as to the meaning and legal effect of the word "heirs" when used in a conveyance of the title to land. This, manifestly, is purely a mistake of law.

The general rule, subject it is true to certain exceptions, is, that courts of equity will not lend their aid to relieve against mere mistakes of law. Mr. Justice Story, in discussing the rule and its exceptions, after analyzing and reviewing at considerable length the leading decisions bearing upon the question, reaches the conclusion that the rule is relaxed in cases where there is a total ignorance of title founded in a mistake of a plain and settled principle of law, and in cases of imposition, misrepresentation, undue influence, misplaced confidence or surprise. "But," says the learned author, "it may be safely affirmed, upon the highest authority, as an established doctrine, that a mere naked mistake of law, unattended by any such special circumstances as have been above suggested, will furnish no ground for the interposition of a court of equity." 1 Story's Eq. Juris. secs. 137, 138.

The general rule above laid down has been frequently recognized and enforced by this court. Thus, in *Sibert* v. *McAvoy*, 15 Ill. 106, a bill was filed to reform a contract after the complainant had made certain unsuccessful attempts to enforce it at law, it being alleged in the bill that a mistake had been made in its phraseology by the person employed to write it. In denying the complainant relief, this court said: "If he misconstrued the contract as written, that was a mistake of law and not of fact, and for such mistakes equity can grant no relief. It is where parties intended to insert words in a contract which were by accident omitted, that equity can reform the contract by inserting them, or by expunging words they did not intend to have inserted. If the words are written as the parties intended they should be written, or supposed they were written, when they signed the contract, no matter how much they may be mistaken as to the meaning of those words, no relief can be granted either at law or in equity. The construction of words is a matter of law. The insertion of words is a matter of fact. It is for mistakes of fact alone that contracts may be reformed."

In *Goltra* v. *Sanasack*, 53 Ill. 456, the complainants' father, in his lifetime, purchased certain lands and had them conveyed by the vendor to his wife and her heirs. After his death, the complainants, who were his children by a former wife, filed their bill to reform said deed, alleging that their father intended to have said lands conveyed to his wife and his said children, and supposed that the grantor had so conveyed them, but that, contrary to such intention, the conveyance was in fact made to said wife and her heirs. In denying the relief thus prayed for, we said: "The rule is inflexible that a mistake or misapprehension of law is never relieved against or corrected. If a party designs to and performs an act under a mistaken view of the law affecting the transaction, he is held to the obligation incurred. As a matter of necessity, all persons are presumed to know and act in view of the law, and the maxim is that ignorance of the law excuses no one." Many other decisions may be referred to in which the rule under consideration is discussed in its various aspects, among which are the following: *Broadwell* v. *Broadwell*, 1 Gilm. 599; *Beebe* v. *Swartwout*, 3 id. 162; *Shafer* v. *Davis*, 13 Ill. 395; *Campbell* v. *Carter*, 14 id. 286; *Gordere* v. *Downing*, 18 id. 492; *Wood* v. *Price*, 46 id. 439; *Sands* v. *Sands*, 112 id. 225; *Bonney* v. *Stoughton*, 122 id. 536.

It would thus seem to be an inevitable conclusion from the authorities, that the case made by the cross-bill is one upon which a court of equity can grant no relief, and that the decree of the court below reforming said deed is erroneous.

For the foregoing reasons, the decree will be reversed and the cause will be remanded to the Circuit Court, with directions to dismiss the cross-bill for want of equity, and to enter a decree upon the original bill giving construction to said deed in accordance with this opinion, the costs in this court and in the Circuit Court to be paid by said assignee out of the assets and estate of the insolvent in his hands.

*Decree reversed.*