SAMUEL W. DINWIDDIE

*v.*

MARY J. SELF.

*Filed at Springfield, April 3, 1893.*

1. CONVEYANCE—*to a woman "and her bodily heirs."* A conveyance of land to a woman "and her bodily heirs," under section 6 of the Conveyance act, will convey to her only a life estate, with a contingent remainder in fee to her children, if any such shall be born, and in default of heirs of her body, the estate in remainder will lapse, and on her death the land will revert to her grantor.

2. AGENCY—*whether a general agency is shown.* Where an unmarried woman with her own means purchases the absolute title to land, and allows her father and brother to look after her interest in closing up the purchase, they will not become general agents, so as to bind her by having the deed made to her for herself and the heirs of her body, and thereby bind her to accept such a deed.

3. CHANCERY — *reforming a deed to conform to the contract of sale.* Where a contract is made for the sale of land in fee without conditions, and the father and brother of the purchaser, without her authority, but voluntarily acting for her without any specific employment, have the deed made to the purchaser and "to her bodily heirs," and recorded, and the grantee takes the deed under the mistaken belief that it passes the fee to her, she may, on discovery of the fact that it passes only a life estate, have the deed reformed in a court of equity so as to convey the fee.

4. When a party offers to sell land without limitation or qualification, for a consideration equal to the cash value thereof, the offer will be considered as of the fee, and when accepted precisely as made, a contract will be consummated for the sale and conveyance of an absolute fee simple title to the land; and a deed which fails, by reason of the use of technical words, to pass such title, whether by mistake of the legal import of such words or by fraud, will not discharge and satisfy the original contract, and such deed may be reformed so as to convey the title intended to be conveyed by the parties.

5. SAME—*correcting mistakes in written instruments.* If an agreement or written instrument, or other transaction, expresses the thought and intention which the parties had at the time and in the act concluding it, no relief, affirmative or defensive, will be granted with respect to it, upon the assumption their intention and thought would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied and expressed, even though it should be incontestably proved that their intention would have been different, if they had been correctly informed as to the law.

6. SAME—*granting relief from mistakes of law.* The general rule is, that a mistake of law, pure and simple, is not an adequate ground of relief, so that when a party, with knowledge of all the material facts, and without any special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities under an ignorance or error with respect to the rules of law controlling the case, courts will not in general relieve him from the consequences of his mistake.

7. It is equally well settled, that there are particular instances in which equity will grant defensive and affirmative relief from mistakes of law pure and simple, as well as from those accompanied by other equitable incidents. If an agreement was what it was intended to be, equity will not interfere with it because the parties have mistaken its legal import and effect; but, if after making an agreement, in process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with appropriate relief, either by way of

defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact.

8. If a written agreement fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases, but the rule is not confined to those instances.

9. LACHES—*facts excusing delay.* A woman bought and paid for a tract of land in 1868, and her brother took the deed and had it recorded; some time in the following year, when the deed was brought home to her, she discovered that the conveyance was to her and her bodily heirs. The grantor declined to rectify the mistake in the deed for fear of liability to the children of the grantee, if she should have any, but several times disclaimed any interest in the land. Her husband took the deed to a reputable attorney for advice, and received from him a written opinion that the legal effect of the deed was to convey to the grantee the title in fee. On this she rested satisfied, occupying the land until some time in 1889, when she learned from another attorney that the deed gave her only a life estate, whereupon she filed her bill to reform the deed: *Held,* that the circumstances showed a sufficient excuse for her delay in filing her bill.

APPEAL from the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Judge, presiding.

This was a bill in chancery, brought by Mary J. Self against Samuel W. Dinwiddie, to reform a certain deed executed by him to her. The bill alleges that, on the 27th day of October, 1868, the complainant was an unmarried woman, her name then being Mary J. Philips; that the defendant was then the owner in fee of certain lands in Cass county containing 220 acres; that at about that date she purchased of the defendant the fee simple title to said lands for $9,000, and paid him the purchase price in full, that being their full value; that she employed her brother, Samuel W. Black, to close up her purchase, and gave him instructions to have the lands conveyed to her absolutely in fee as her sole and separate property; that her agent was not

authorized by her to accept any deed not conveying to her the entire estate and title to the lands; that for the consideration aforesaid, the defendant agreed to convey the lands to the complainant in fee, free and clear of all incumbrances, by a good and sufficient deed of general warranty; that the defendant thereupon employed some one to the complainant unknown to prepare the deed, and that the scrivener so employed prepared a deed, bearing date October 27, 1868, which was executed by the defendant and his wife and delivered to the complainant's agent, and by him placed on record, without being submitted to the complainant; that by mistake of the scrivener or by the unauthorized direction of the complainant's agent, the deed was so drawn that it did not express the intention of the complainant and defendant in purchasing and selling the land, in that it conveyed the land to the complainant "and her bodily heirs," instead of conveying it to the complainant in fee simple; that the deed was delivered by the defendant and accepted by the complainant's agent as a deed conveying the fee, and that the complainant did not know that it only conveyed a life estate, until about June 1, 1891, when she was so informed by counsel whom she consulted in regard to the matter.

The bill further alleges that the deed does not convey the lands to the complainant in fee simple, as her sole and separate property, but only for life, with remainder in fee to the issue of her body her surviving, with a reversion, in default of such issue, to the defendant and his heirs; that the complainant has never had children or issue of her body, and that she is past the age of child-bearing and will never have such issue; that immediately after the purchase of the lands in question, the complainant entered into the possession, and has continued the possession and occupancy thereof, by herself or tenants, from that time to the present, and has made valuable improvements thereon, costing several thousand dollars; and after learning of the mistake

in the deed, she requested the defendant to execute and deliver to her a quit-claim deed conveying to her any reversionary interest in the lands which, by reason of the mistake in the deed, still remained vested in him, and that he refused to execute any such deed. The bill prays to have the deed so reformed as to express and carry out the intention of the parties, and to vest in her the fee simple title to the land.

The defendant by his answer insists that the bill is without equity. He admits that he conveyed the land to the complainant and her bodily heirs, and that the complainant paid him for such conveyance the sum of $9,000, and that the complainant thereupon went into possession of the land. and has ever since retained such possession. He denies that the scrivener who drew the deed made any mistake in drawing the same, but that the deed was made and executed to her and her bodily heirs at the complainant's request, and with her full knowledge and consent, and with the knowledge and consent of her agent, and that there was no mistake, misunderstanding or fraud in making the sale or in conveying the land; that the defendant did not agree to convey to the complainant the lands in question in fee simple, but only agreed to convey them to her and her bodily heirs, as was done by the deed which he executed. All the other allegations of the bill were expressly denied.

A replication was duly filed, and the cause coming on to be heard on pleadings and proofs, a decree was rendered, finding that the equities were with the complainant, and that she was entitled to the relief prayed for in her bill. The decree further found that the deed to the complainant and her bodily heirs did not correctly express the contract and agreement of the complainant and defendant in the purchase and sale of the lands, and that it ought to be so corrected as to express such intention, and to convey the land to the complainant in fee simple. It was thereupon decreed that the deed be reformed and corrected so as to

express the contract of the parties, and that the word "bodily," whenever it occurs therein, be stricken from the deed, so as to make it a deed to the complainant and her heirs. From that decree the defendant has appealed to this court.

Mr. M. T. LAYMAN, for the appellant:

The opinion of McClure & Stryker had no business in the case. There is no fraud, surprise or mutual mistake alleged, and without one of these causes alleged the bill has no equity. There can be no revision of an executed contract, unless it is tainted with actual fraud. *Beebe* v. *Swartwout*, 3 Gilm. 162.

Resort can not be had to parol evidence to correct a written contract, unless fraud, mistake or surprise is alleged. *Emery* v. *Mohler*, 69 Ill. 221.

Even if the allegations of the bill are sufficient, the evidence fails to show any right to the relief sought, for the rule is to justify the correction of a written instrument, the evidence must be clear, strong and satisfactory. *Sapp* v. *Phelps*, 92 Ill. 588; *Schwass* v. *Hershey et al.*, 125 id. 653; *Ewing* v. *Sandoval Coal Mining Co.*, 110 id. 290; *Goltra* v. *Sanasack et al.*, 53 id. 456.

The evidence must leave little doubt, if any, of the mistake. *Miner* v. *Hess*, 47 Ill. 170.

The evidence must be entirely satisfactory. *Shay* v. *Pettes*, 35 Ill. 360; *Adams et al.* v. *Robertson et al.*, 37 id. 46.

Contracts can only be reformed for mistake of fact. *Sibert* v. *McAvoy*, 15 Ill. 106; *Shafer* v. *Davis*, 13 id. 396.

The appellant made such a deed as the agent of appellee requested, and the principal is bound by the acts of his agent.

Appellant swears positively that he took this deed to appellee, called her attention to it, and she and her father

stated that was the kind of deed they wanted, and appellee does not positively deny this, and the evidence of Mr. Black that he thinks he took the deed the same day it was executed and filed it for record, because that would have been his practice, but can not say so from memory, is clearly contradicted by the file marks, as it was filed for record seven days after it was executed. If appellee wanted a different deed she was guilty of great negligence in accepting this one, and equity will not relieve a party from his own negligence where no fraud or deception is praticed. *Roberts* v. *Hughs*, 81 Ill. 130.

We challenge the attorneys for appellee to cite any authority for a court of equity to correct a deed, simply because the grantee to take the remainder has failed.

An attempt was made to prove that appellant agreed to execute to appellee another deed, but the evidence fails to establish it, and even if it did, it is not claimed there was any consideration for the agreement, without which it can not be enforced.

In order to correct a mistake in an executed contract, the mistake must be mutual and the proof clear and satisfactory. *Emery* v. *Mohler*, 69 Ill. 221, above cited. It is not even claimed that appellant made any mistake.

The case of *Oswald* v. *Sproehnle*, 16 Bradw. 368, is a case directly analogous with the one at bar, and we respectfully ask the court to examine it.

Mr. E. L. McDonald and Mr. Edward P. Kirby, for the appellee:

"An agreement is *aggregatio mentium*, viz., when two or more minds are united in a thing done or to be done, or where a mutual assent is given to do a particular act." Comyn on Contracts, vol. 1, p. 2.

"Every contract includes a concurrence of intention between two parties, one of whom promises something to the other, who, on his part, accepts such promise." Addison on Contracts, vol. 1, p. 2.

"Greater regard is to be had to the clear intention of the parties than to any particular words which they may have used in the expression of their intent." Anson on Contracts, sec. 241.

We think the rule is well established, that where the act is not disputed, but affirmed, and the question whether the act shall be held valid or invalid depends upon the motive or intent with which it was done, and such motive or intent would, from its nature, be formed and held without expression, then the party whose motive or intent is material may be called to testify whether he had such motive or intention when he did the act. *Seymour* v. *Williams,* 4 Kernan, 568; *Griffin* v. *Marquart,* 21 N. Y. 121; *McKown* v. *Hunter,* 30 N. Y. 625; *Thurston* v. *Cornell,* 38 N. Y. 281.

If an agreement or written instrument expresses the thought and intention which the parties had at the time, and in the act of concluding it, no relief, either affirmative or defensive, will be granted upon the assumption or proof that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is expressed. 2 Pomeroy's Eq. Jur., sec. 843.

We respectfully insist that this case falls within another rule which is laid down by the same able writer, as follows: "If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written in-

strument.  In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing.

Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases; but the rule is not confined to these instances." Pomeroy's Equity Jurisprudence, vol. 2, sec. 845, p. 1412; see also *Oliver* v. *Mut. Com. Ins. Co.*, 2 Curtis, 277; *Champlin* v. *Layton*, 6 Paige, 189; 18 Wend. 407; *Hausman* v. *Burnham*, 59 Conn. 117; *Canedy* v. *Marcy*, 13 Gray, 373–377; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290.

Where there are in the transaction, independent of the mistake of law, other grounds for equitable interposition, such as mistake of fact, or fraudulent conduct, or such other grounds as of themselves would justify the interposition of a court of equity, then relief may be granted, notwithstanding the general rule.  The fact that a party has also made a mistake in the law, should be no bar to his relief on other grounds.  He should not be compelled to submit to fraud because he has erred as to the law. *Whelen's Appeal*, 70 Pa. St. 411; *Griffith* v. *Townley*, 69 Mo. 13; *Wheeler* v. *Smith*, 9 How. 55; *Spurr* v. *Benedict*, 99 Mass. 463; *Snell* v. *Ins. Co.*, 98 U. S. 86; *Tyson* v. *Passmore*, 2 Pa. St. 122; *Jordan* v. *Stevens*, 51 Me. 78; *Sands* v. *Sands*, 112 Ill. 225.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the court:

While the evidence of the negotiations which resulted in the purchase from the defendant by the complainant of the land subsequently conveyed is not very full or circumstantial, yet we think it shows with sufficient clearness that the

contract which the parties intended to make, and which they in fact made, was for the purchase and sale of the fee. Indeed, upon this question there seems to be no substantial disagreement in the testimony of the witnesses.

The complainant testifies, in substance, that shortly prior to the execution of the deed, she, with her brother, visited the defendant's farm to look at it with the view of purchasing it; that after she had been over it, the defendant offered it to her for $9,000; that nothing was said about the reservation by the defendant of any portion of the title or of any interest in the land, her understanding being that the defendant offered to convey to her the land in fee for the price named; that she did not accept the defendant's offer at that interview, but subsequently, on the same day, having concluded to accept it, she sent her brother to the defendant to notify him of such acceptance.

Her testimony is substantially corroborated by that of her brother who went with her to see the farm, and he further testifies that $9,000 was the fair cash value of the land at that time, and in this he is not disputed by any other witness.

The defendant testifies that the complainant and her brother came to see the farm, and that he then gave them the price at which he would sell it; that his offer was not accepted at that interview, but that on the same day the complainant's brother came back and said they would take the place; that when he sold the land to the complainant, he did so with the intention and expectation of conveying to her all the estate he had in it.

It is also clear that the deed which the defendant afterward executed in performance of the contract of sale thus made, was not a conveyance to the complainant of the fee. The conveyance was limited to the complainant "and her bodily heirs," a limitation which, at common law, would have created an estate in fee tail. But by section 6, of chapter 23, of the Revised Statutes of 1845, which was in

force at the time the conveyance was made, and which has since been re-enacted as section 6, of chapter 30, of the Revised Statutes of 1874, estates in tail are abolished, and it is provided that, in cases where, by the common law, any person might become seized in fee tail of any lands by virtue of any conveyance, such person, instead of becoming seized in fee tail, shall be deemed and adjudged to be and become seized thereof for his or her natural life only, and the remainder shall pass in fee simple absolute to the person or persons to whom the estate tail would, on the death of the grantee, first pass, according to the course of the common law, by virtue of such conveyance.

The complainant, at the time of the execution of the deed to her, was a widow, and without children or descendants. No person therefore was then in being who, upon her death, could have taken as heirs of her body. It is true, she was then contemplating marriage, and shortly after the execution of the deed, was married to her present husband. The deed then, by force of the statute, conveyed to her only a life estate, with a contingent remainder in fee to her children, if any such should afterward be born, and in default of heirs of her body, the estate in remainder necessarily lapses, and at her death the land reverts to the defendant in fee. In point of fact she has had no children, and as she claims, and as her evidence tends to show, she is now past the period of child-bearing, and the probable, if not the necessary result, if the deed is allowed to stand as it was executed, is, that the estate thereby conveyed is only for the life of the complainant, with reversion in fee to the defendant and his heirs. That such is not the estate for which the complainant contracted when she purchased the land, is to our minds too clear for controversy.

Upon these facts two questions arise, first, whether the limitation to the complainant "and her bodily heirs" was inserted in the deed by mistake, and, second, whether it is a mistake which a court of equity will correct.

The evidence as to the way in which this limitation happened to be inserted in the deed is, in substance, as follows: At the time the complainant purchased the land, she was living at her father's house, and he seems to have taken charge, to some extent, of her business affairs. After she had been to see the defendant's farm and had concluded to purchase it at the price offered by the defendant, and had requested her brother to communicate to the defendant her acceptance of his offer, her father seems to have taken it upon himself to procure the execution of the conveyance, and for that purpose he sent the complainant's brother to the defendant to close the transaction up and get the deed. His instruction to the agent thus sent was to have the deed drawn with a limitation to the complainant and "her bodily heirs," and he, in pursuance of such instruction, had the deed drawn up and executed with such limitation, and in that form placed it on record. The complainant testifies that the instruction thus given by her father to her brother was wholly without authority from her and without her knowledge or consent, and that she was not aware of the insertion of such limitation in the deed until a considerable time after the deed was executed, and after her marriage to her present husband. Her father is dead, and his testimony is therefore not available. Her brother testifies to having received his instructions from his father, but he has no recollection of having conversed with the complainant about the matter, or of having received any instructions from her in relation to it. It follows that there was no direct evidence tending to dispute the testimony of the complainant on this branch of the case.

The defendant testifies, it is true, that after the deed was executed, he carried it to the house of the complainant's father and there personally delivered it to the complainant, and that she and her father then examined it and said it was just as they wanted it. In this, however, he is directly contradicted by the complainant, who testifies that,

at the time the defendant claims to have visited her father's house, she was not there, she having left some days before, and having gone to another place some distance away, where she remained until after her marriage, and that she never saw the defendant, to her recollection, except at the time she went to see the farm prior to the purchase. She also swears that the first time she saw the deed was some time after her marriage, when it was brought to her by her husband. As to the difference in the recollection of these two witnesses it is only necessary to say, that the judge of the court below, who saw the witnesses and heard them testify, and therefore had better means of judging as to their respective credibility than we can have, reached the conclusion that the defendant was mistaken, and we can see no reason why we should not accept his conclusion as the true one. The view of the testimony taken by him probably was, that while it may be true that the defendant took the deed to the house of the complainant's father and conversed with him about it, he is mistaken in his recollection that the complainant was present.

In view of all the evidence, then, we are of the opinion that the court below was justified in finding, as a fact, that neither the complainant's father nor her brother had any authority from her to procure the insertion in the deed conveying the land to her, of a limitation of the estate conveyed, to her and the heirs of her body, and that such limitation was inserted in the deed wholly without her knowledge, authority or consent. Neither her father nor her brother is shown to have been in any proper sense her general agent. The contract of purchase was made by herself in person, except merely that she employed her brother to communicate to the defendant her acceptance of the offer which he had previously made to her. What her father and brother subsequently did by way of consummating the purchase and obtaining the conveyance, seems to have been done, not by virtue of any specific employment by her, but by way of

rendering such voluntary assistance as a father and brother, having a proper interest in her welfare, would naturally render under such circumstances. Their authority to act as her agents, so far as the evidence shows, was merely voluntary on their part and permissive on hers, and extended merely to closing up the purchase as she had made it, and not the imposition of new terms, or the insertion of limitations to which she had not assented and of which she knew nothing.

The defendant's testimony throws some light upon the motives which actuated the complainant's father in instructing her brother, when he sent him to look after the execution of the deed, to have that instrument so drawn as to limit the title conveyed to the complainant and the heirs of her body. The defendant testifies that the brother gave as a reason why they wished such limitation inserted, that the complainant was about to be married, and they wanted the deed so drawn that no person—referring probably to her intended husband—could get hold of the land. If then the limitation was inserted for such purpose, without the complainant's knowledge or consent, it was in the nature of a fraud upon her, of which the defendant had notice, if he did not actively participate in it. She bought the land for herself and paid for it with her own money, and any attempt by her father and brother, for purposes of their own, to place limitations upon her title, without her knowledge or authority, were unauthorized acts, for which she should not be held responsible.

Keeping out of view for the present any question of laches on the part of the complainant, we think her right to a reformation of the deed is undoubted. It is not an adequate execution of her contract of purchase, that contract being for the fee, while the deed leaves the reversion, after her life estate, in the grantor. The defendant's contention, however, is, that even though the deed does not express the intention of the parties, the mistake is one of law, which a court of equity can not correct.

If the deed had been executed as an original transaction, and not by way of performance or of putting into form an antecedent oral contract between the parties, then if it had appeared that the complainant's brother, in procuring its execution, had authority on her behalf to procure or consent to the insertion of the limitation to her and the heirs of her body, in such way as to give the act the same legal effect as though performed by herself, there would probably be much force in the defendant's contention. If, under the circumstances supposed, she had personally requested the insertion of this limitation, or had accepted the deed with full knowledge of its terms, she would have been bound by the instrument as executed, however much she may have been mistaken as to the legal effect of the language thus employed. An illustration of this rule may be found in the case of *Fowler* v. *Black*, 136 Ill. 363. The same effect would doubtless be given to the act of her agent, if his authority had extended to the adoption and acceptance on her behalf of the same clause. But, as we have seen, the evidence fails to show the existence of such authority.

The general rule is, that a mistake of law, pure and simple, is not adequate ground of relief. Where a party, with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities, under an ignorance or error with respect to the rules of law controlling the case, courts will not in general relieve him from the consequences of his mistake. 2 Pomeroy's Eq. Juris., sec. 842. Accordingly, if an agreement or written instrument, or other transaction expresses the thought and intention which the parties had at the time and in the act concluding it, no relief, affirmative or defensive, will be granted with respect to it, upon the assumption that their thought and intention would have been different, if they had not been mistaken as to the legal meaning and effect of the terms and provisions by

which such intention is embodied and expressed, even though it should be incontestably proved that their intention would have been different if they. had been correctly informed as to the law. Id., sec. 843.

But firmly settled as are the foregoing general rules, it is equally well settled that there are particular instances in which equity will grant defensive and affirmative relief from mistakes of law pure and simple, as well as from those accompanied by other equitable incidents. Among the particular instances where such relief will be granted, the learned author to whom reference is above made, lays down the following: "If an agreement is what it was intended to be, equity will not interfere with it, because the parties have mistaken its legal import and effect. If, on the other hand, after making an agreement, in process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract as actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases; but the rule is not confined to those instances." Id., sec. 845. To

20—145 ILL.

similiar effect, see, *Oliver* v. *Mutual Commercial Ins. Co.*, 2 Curtis, 277; *Champlin* v. *Layton*, 6 Paige, 189; *Champlin* v. *Layton*, 18 Wend., 407; also authorities cited by Mr. Pomeroy in note to sec. 845.

The present case clearly falls within the exception to the general rule thus pointed out and discussed by Mr. Pomeroy. The defendant's offer was, to sell to the complainant the land, an offer which, made as it was without limitation or qualification, and for a consideration equal to the fair cash value of the land, must be understood as a proposition to sell the fee, and the offer was accepted by the complainant precisely as it was made. A contract was thereby consummated for the sale and conveyance by the defendant to the complainant, for the consideration named, of an absolute fee simple title to the land. Both parties understood that the conveyance was to be in fee, and both intended that the contract should be so executed. But by the unauthorized act of the complainant's agent or by the mistake of the scrivener, it matters little which, technical words were inserted, the legal effect of which was to limit the estate conveyed to the complainant to a tenancy for her life only. Thus, through a mistake of law, the conveyance failed to express the contract into which the parties had actually entered. It follows that the case is one in respect to which a court of equity, upon principles above set forth, will grant relief.

Is the complainant barred of relief by her laches? The evidence tends to show that the first time she saw the deed or was in any way made aware of the limitation upon her estate therein contained, was sometime in the year 1869, when it was brought home from the recorder's office by her husband, and that her attention was then called for the first time to its terms. Her husband, though not a lawyer, expressed some doubts as to its sufficiency to convey the estate which the complainant had purchased and paid for, and he shortly afterward called upon the defendant and ex-

pressed to him his doubts, and requested him to execute to the complainant a quit-claim deed, which the defendant promised to do. A quit-claim deed being drawn up and presented to the defendant to be executed, he declined to execute it then, but promised to attend to the matter when he went to town. On going to town, he consulted with an attorney, and after obtaining his advice, he declined to execute the quit-claim deed, assigning as an excuse, that he had been advised that if the complainant should have children, they might have recourse upon him, in case he made any further conveyance to the complainant. On one or more occasions, he disclaimed having any beneficial interest in the land himself. Under these circumstances, the complainant's husband applied in her behalf to a reputable attorney for advice as to the character of the complainant's title, and received from him an opinion in writing, that the legal effect of the deed was to convey to her an absolute and complete title in fee simple. The complainant rested satisfied and content with this advice, until sometime in the year 1889, she all of the time remaining in possession of the land, either by herself or by her tenants. About the date last mentioned, she consulted with one of her present counsel in relation to the matter, and then for the first time was advised that her estate was only for life, and she thereupon brought the present suit. We think these circumstances furnish a sufficient explanation and excuse for her delay in applying to a court of equity for a reformation of the deed, and that she is not guilty of such laches as should bar her right to relief.

Other objections to the decree are alleged which we have duly considered, but which we do not regard as tenable, or as calling for discussion. We are of the opinion that the decree is warranted by the evidence, and it will therefore be affirmed.

*Decree affirmed.*