RACHAEL E. GOLTRA *et al.*

*v.*

ALMIRA E. SANASACK *et al.*

1. MISTAKE—*reforming contracts, in equity.* A court of equity will not grant relief against or correct a mistake or misapprehension of the law, and if a party designs to and performs an act, under a mistaken view of the law affecting the transaction, he is held to the obligation incurred.

2. Nor will equity relieve against a mistake of fact unless such mistake is satisfactorily established, and not inferred from loose, doubtful or unsatisfactory evidence.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. A. J. GALLAGHER, Judge, presiding.

This was a suit in chancery, brought by Rachael E. Goltra, Mary A. Goltra, James Goltra and William F. Goltra, minor heirs of Clarkson K. Goltra, deceased, against Almira E. Sanasack, surviving widow of said Clarkson K. Goltra, and Ira Gardner, for the purpose of having a deed of conveyance reformed and an alleged mistake corrected. It appears from the record that Goltra, in his lifetime, purchased the lot in controversy, and had the same conveyed by deed, absolutely, to. his wife, Almira Goltra, since intermarried with one Sanasack; that complainants, who are, with the exception of William F.

children by a former wife, claim it was the intention of their father to have the lot conveyed to his wife and his children. Upon the hearing below, the bill was dismissed, and to reverse the order of dismissal, complainants bring the record to this court.

Mr. A. E. HARMON, for the plaintiffs in error.

Mr. C. B. SMITH, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The heirs of Clarkson K. Goltra, by their guardian, filed this bill for the purpose of having a deed of conveyance reformed, and an alleged mistake corrected, for the lot of ground in controversy. It appears that the ancestor of plantiffs in error, in the year 1858, contracted to purchase the lot in question of one Leonard Hodges, for the sum of $800, to be paid in monthly installments of $25 each, and upon a final payment of the purchase money, he applied to Hodges for a deed of conveyance. Hodges suggested to Goltra that he had better have the conveyance made to his wife, for reasons then stated. After·consulting with an acquaintance, Goltra had the deed made to his wife, and surrendered to Hodges his bond.

Subsequently, Goltra was killed while in the employment of the Illinois Central Railroad Company, leaving plaintiffs in error, children by a former wife, and a child by the grantee of this lot, his heirs at law. The widow afterwards sold the premises to Ira Gardner, her co-defendant in error, but it is agreed that Gardner has abandoned the purchase and claims no interest in the same.

It is urged, in favor of a reversal, that Goltra intended to convey, and supposed he had Hodges to convey the lot to his wife and his children, but, contrary to his intention, it was conveyed to his wife and her heirs, and not to her and all of his children, and it is urged that a trust should be declared, and

the deed reformed so as to convey to each of his four children an equal portion with his widow.

Mistake is one of the heads of original chancery jurisdiction, and it has not, nor can it be successfully challenged ; but it is equally well established as a rule in courts of equity that, to grant relief, it must be a mistake of fact, and not of law ; and the mistake must be satisfactorily established, and not inferred from loose, doubtful or unsatisfactory evidence. But the rule is inflexible, that a mistake or misapprehension of the law is never relieved against or corrected. If a party designs to and performs an act, under a mistaken view of the law affecting the transaction, he is held to the obligation incurred. As a matter of necessity, all persons are presumed to know and act in view of the law, and the maxim is, that ignorance of the law excuses no one ; and the rule applies equally in the administration of criminal, common law and equitable justice. All three of the courts are governed by this maxim.

There is evidence of declarations made, before and after the deed was executed, by Goltra, tending to prove that he believed the property was conveyed to his wife and children. But it seems that he inferred that to be the case from the manner in which the deed was drawn, or he only so stated to avoid a defense of the act. He so stated to his mother even after she assured him she had read the deed, and that the conveyance was to his wife and her heirs, and not to her and his children. He seems to have stated to a number of persons that the property was conveyed to, or would be for the support of, his family, in case of his death, but he seems to have spoken of it as belonging or as having been deeded to his wife, to, perhaps, as many other persons. In this apparent conflict of evidence, we can not say that it is proved there was any mistake either in law or fact in having the deed executed. There is quite as much evidence that there was no mistake, as that a mistake occurred. If any mistake was made, it was of law, and not of fact.

We find no evidence in the record that he gave any directions to the scrivener who drew the deed, to prepare it so as to

give his children by his former wife an equal or other interest in the property with his wife, or that, when the deed was made, he intended it should be otherwise than it was drawn and executed. It is, to say the least, singular, when he borrowed money, and his wife gave a mortgage, that he only spoke of the property as belonging to his wife, if he supposed his children had any interest in it, and when he spoke of regretting that he was under the necessity of having the property of his wife mortgaged, if he supposed his children held an interest in it, that he in no wise referred to them.

Admitting that he repeatedly said that, in case of his death, he had provided for his family, such declarations do not necessarily imply that he supposed he had the property conveyed to his children. He may have supposed that, until able to provide for themselves, his wife would keep and care for them, and if such was his expectation, he would, no doubt, speak as he did. Again, after his mother assured him that the deed was so drawn that his children by his first wife could hold no part of it, he is not shown to have given the matter any attention, or to have investigated it, or manifested any disappointment that the deed had been so executed. In view of all the evidence in the case, we can not say that it appears any mistake was made, either in law or fact. There is not evidence requiring the deed to be reformed, and the decree of the court below must be affirmed.

*Decree affirmed.*