412     APPELLATE COURTS OF ILLINOIS.

Watson et al. v. The Concordia F. I. Co. of M., 213 Ill. App. 412.

## Fred P. Watson and Ed Crossen, Plaintiffs in Error, v. the Concordia Fire Insurance Company of Milwaukee et al., Defendants in Error.

1. REFORMATION OF INSTRUMENTS, § 21*—*when contract not reformed because of mistake.* Equity will not reform a contract where the mistake is one as to the legal effect of the words used.

2. INSURANCE, § 118*—*when contract not reformed because of mistake.* The rule that permits liberal construction against insurance companies will not justify the making of a new contract, in a suit for reformation, where the parties were mutually mistaken as to the legal effect of the words used.

3. INSURANCE, § 118*—*when fire policy not reformed to protect purchaser on foreclosure and second mortgagee.* Equity will not reform a fire insurance contract so as to afford protection to a purchaser on foreclosure and a second mortgagee with a right of redemption, where the parties submitted the policy to the insurance company after foreclosure and the company wrote merely the fact that the complainants had acquired title under foreclosure without promising indemnity, and the policy as annotated was returned and accepted by the complainants under a mistake as to its legal effect.

4. INSURANCE—*when unearned fire premium insufficient consideration for promise to indemnify purchaser under foreclosure.* The unearned premium on a fire insurance policy would not be sufficient consideration for a promise by the insurance company to indemnify a purchaser under foreclosure unless the previously insured mortgagor, still having his right of redemption, consented thereto.

Error to the Circuit Court of Marion county; the Hon. WILLIAM B. WRIGHT, Judge, presiding. Heard in this court at the March term, 1918. Affirmed. Opinion filed November 1, 1918. Rehearing denied March 26, 1919.

NOLEMAN & SMITH, for plaintiffs in error.

EDWARD C. CRAIG, DONALD B. CRAIG, JAMES W. CRAIG, JR. and FRED H. KELLY, for defendant in error Concordia Fire Ins. Co. of Milwaukee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The plaintiffs in error, hereinafter called plaintiffs, filed a bill in the Marion County Circuit Court seeking to reform a contract of insurance, to which bill the defendant in error, The Concordia Fire Insurance Company of Milwaukee, hereinafter called defendant, filed a demurrer. Upon a hearing the court sustained the demurrer and the plaintiffs elected to stand by their bill, and thereupon the court dismissed the bill for want of equity, to reverse which decree this writ of error is prosecuted.

It appears from the allegations of the bill that on June 27, 1914, the property described in the bill was then owned by W. A. Mays and Madge Mays, and on that date they executed a mortgage upon said premises to John McNeil as security for $250, and thereafter on January 5, 1915, they conveyed the property to H. C. Perryman and E. J. Perryman, subject to said mortgage. On January 11, 1915, the said Perrymans procured insurance from the defendant against loss by fire to the amount of $650, said policy to expire on January 11, 1918. That thereafter the said Perrymans executed a second mortgage to plaintiff Ed Crossen to secure $250, and agreed in said mortgage to keep the buildings insured for the benefit of the mortgages. That the defendant attached a rider to said policy issued to the Perrymans, providing that the loss, if any, should be payable to John McNeil, holder of the first mortgage, and Ed Crossen, the holder of the second mortgage, as their interests might appear. Thereafter the said property was slightly damaged by fire and the loss was paid under said policy, and after deducting such loss left the policy remaining in force to the amount of $573.50. Perrymans made default in the payment of said mortgage to John McNeil and a bill was filed by him to foreclose the mortgage. Ed Crossen was made a party

and by answer set up his mortgage. A decree of foreclosure was entered in favor of the said John McNeil and the said Ed Crossen for the amounts due on their respective mortgages. The decree provided that the McNeil mortgage should be paid in full and the Crossen mortgage be next paid. On December 4, 1915, pursuant to said decree, the property was sold by the master in chancery and was bid in by Fred P. Watson for the sum of $337. The McNeil mortgage was paid in full and a deficiency decree was entered against the said Perrymans in favor of Crossen for $221.74. A receiver was appointed to collect the rents. On March 27, 1916, the dwelling house situated upon said premises insured by the said policy was totally destroyed by fire while said policy was in force, and resulted in a loss and damage to an amount in excess of the face of the policy. The bill then alleges that soon after the said property was sold at said foreclosure sale and after the deficiency decree had been entered and prior to said fire, the plaintiffs applied to the defendant for insurance against loss by fire covering their respective interests in said property and offered to pay the premium and charges of defendant therefor. That plaintiffs informed the agent of defendant of the facts hereinabove set forth concerning the title to said property and the mortgages thereon, which it is alleged the said company then and there had full knowledge. It is also alleged that defendant was advised that Fred P. Watson was interested in said property as owner of said certificate of purchase and Crossen was interested by reason of his deficiency decree and having a right to redeem from said foreclosure sale, and was further interested by virtue of his mortgage aforesaid. It is further alleged that the defendant by its agent advised the plaintiffs that it would not be necessary or proper to issue a new policy to cover the interests of plaintiffs, but that said policy then in force could and would be properly made to extend to and cover such

an interest by an indorsement thereon, and that thereupon the said plaintiffs agreed to pay whatever premium or charge the said insurance company should make or demand for such insurance but left the details and manner in which said insurance should be written and the form of the policy or indorsement thereon to the judgment and direction of said insurance company; and left it free to determine whether a new policy should be written or an indorsement placed upon and attached to said policy. That the said defendant company then and there agreed and promised your orators that in consideration of the unearned premiums already paid for said policy by said H. C. Perryman and E. J. Perryman, said insurance would be written and placed by it so as to protect the respective interests of plaintiffs. That the defendant company, in compliance with its agreement to insure the interests of plaintiffs in said company, elected not to write a new policy but to make an indorsement on said policy then in force and, for the purpose and with the intention of insuring plaintiffs' interests in said policy, did attach to said policy the following indorsement, to wit, "It is agreed and understood that Fred P. Watson acquired title to property insured under policy No. 21471, by being owner of master's certificate of purchase," and that by said indorsement intended and understood that it was thereby insuring the interests of plaintiffs in said property to the amount of the face of said policy less the loss theretofore paid. That the defendant then and there delivered said policy of insurance to plaintiffs and assured them that by said indorsement it had insured plaintiffs' interests in said property according to its agreement so to do, and plaintiffs acting and relying upon said agreement to insure their respective interests in said property as aforesaid, and the promise and assurance of said insurance company that by said indorsement it had so insured said interests, they accepted said policy and retained the same believing that such representations

of said insurance company were true and that said policy had been extended by said indorsement so as to cover and insure the interests of plaintiffs therein as agreed and represented by said insurance company, and that plaintiffs relied solely upon the judgment and knowledge of said insurance company to write said policy accordingly, or to place the proper indorsement thereon, and fully believed that said policy and indorsement insured their respective interests in said property as agreed upon. It is further alleged in said bill that in consideration of said unearned premium, and in further consideration of plaintiffs' promises to pay any further proper charges therefor, the said insurance company did agree to insure your orators' respective interests in said property. That said policy as written and the·said indorsement thereon do not set forth the contract and agreement of your orators with the said defendant, and that the agent of the said company, duly appointed and authorized to act for it in that behalf, by mistake of the effect and legal meaning of the language used, made said indorsement, believing that said insurance company by said indorsement had made said policy extend to and by it, had insured the respective interests in said property of plaintiffs, and by said indorsement intended so to do, and plaintiffs believing that said policy had been properly written, and that said indorsement was sufficient to express their agreement with said insurance company, and intended said insurance to cover and insure their respective interests in said property, accepted the same under such belief and mistake as to its legal effect. The bill then alleges that said policy should be reformed and that said indorsement, by mutual mistake of fact by the duly authorized agent and plaintiffs, fails to express their agreement as to the insurance of said company of the interests of plaintiffs in said property. The bill then alleges that the defendant denies liability under said contract, and

that proper proofs of loss were made.

The bill alleges that the said Perrymans and others claim to have some interest in said real estate, the exact nature and character of which is unknown to the plaintiffs.

To this bill the defendant filed a demurrer setting forth a misjoinder and nonjoinder of both parties, plaintiffs and defendant; that the bill does not sufficiently allege the terms of supposed real agreement, nor does it show wherein the writing sought to be reformed failed to embody the real agreement. It also alleges as a cause of demurrer that the allegations of the bill clearly show that reformation is prayed for on account of a mistake of law and not on account of a mistake of fact. The court upon a hearing sustained the demurrer. The plaintiffs elected to stand by their bill and the bill was dismissed for want of equity.

It is urged by the plaintiffs that while several causes of demurrer were interposed that the only cause argued was, that the allegations of the bill showed that reformation is prayed on account of a mistake of law and not on account of a mistake of fact. This was the principal question argued by counsel for plaintiffs and defendant, and, as we view it, is the only one necessary to be considered in the determination of this cause.

It appears from the record that after this property had been sold by the master in chancery and purchased by plaintiff Watson, and he had received a certificate of purchase therefor, and before the fire that the plaintiffs requested of the defendant insurance to protect their interest in this property, and that the agent of the defendant advised them that it was not necessary to issue a new policy but that all that was necessary to be done was to make an indorsement upon the policy that had been issued to the Perrymans. Thereupon the agent made the following indorsement upon the policy, to wit: ''It is agreed and understood that Fred P. Watson acquired title to property insured under

418    Appellate Courts of Illinois.

Watson et al. v. The Concordia F. I. Co. of M., 213 Ill. App. 412.

policy No. 21471, by being owner of master certificate of purchase.''

It also appears from the bill that by the said indorsement it was intended and understood that it was thereby insuring the interests of plaintiffs in said property; that the policy was then and there delivered to the plaintiffs by the defendant and that the plaintiffs relying upon the agreement of defendant to insure their respective interests and the assurance of defendant that by said indorsement it had so insured their interests, that they accepted said policy and retained the same believing that said representations of said insurance company were true and that said policy had been extended by said indorsement so as to cover and insure the interests of the orators therein, as agreed and represented by said insurance company; and that plaintiffs relied solely upon the judgment and knowledge of the insurance company to write said policy accordingly, and believed that by said indorsement their respective interests were insured as agreed upon.

It is further alleged in said bill: ''That the agent of the said insurance company, duly appointed and authorized to act for it in that behalf, by mistake of the effect and legal meaning of the language used, made said indorsement, believing that said insurance company by said indorsement had made said policy extend to and by it, had insured the respective interests in said property of your orators, and by said indorsement intended so to do, and your orators believing that said policy had been properly written and that said indorsement was sufficient to express their agreement with said insurance company, and extend said insurance to cover and insure their respective interests in said property, accepted the same under such belief and mistake as to its legal effect.''

It seems to us that from a careful reading of this bill that by it the plaintiffs seek to reform a mistake in the making of the contract, wherein the parties.

notwithstanding they knew the language used to express their contract, were mistaken as to the legal effect of the language used. "This indorsement, as a matter of fact, did not express the agreement, but it was given to the plaintiffs in error with the representation and assurance on the part of the agent of the insurance company that in legal effect it did express their agreement, and that it was the only proper way to insure their interests in this property. It was accepted from the insurance company on the direct representations that the effect of the indorsement was to express the agreement of the parties concerning the insurance of their interests in said property." And again, counsel for plaintiffs in their brief say: "It will be contended further that there can be no reformation in this case because it will be argued that it was merely a mistake of the legal effect of the language used in the indorsement. This contention, however, is not supported by any authority." Counsel then in support of their position cite several cases from other States, and some cases from this State, which apparently support their contention that where there has been a mutual mistake of the parties as to the legal effect of a contract that it may be reformed in equity.

As we view it, the mistake made by both of the parties was as to the legal effect of the language used, and the only question to be considered is, "Did the court have the right to reform the instrument because the parties were mistaken as to the legal effect of the language used?" Counsel for plaintiffs rely chiefly upon the case of *Dinwiddie v. Self*, 145 Ill. 290, in which opinion the language claimed by counsel as sustaining this view is found, and it is true the court there says: "If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by can-

cellation, or by reformation, to the same extent as if
the failure of the writing to express the real contract
was caused by a mistake of fact.'' In view of later
decisions of the Supreme Court, we are constrained to
believe that this is not of controlling authority upon
this question. That was a case wherein Mary J. Self
contracted with Dinwiddie for 220 acres of land and
paid the purchase price in full and directed her
brother Samuel Black to close up the purchase and
gave him instructions to have the land conveyed to
her absolutely in fee as her sole property. That the
brother under the directions of her father caused the
land to be conveyed to ''Mary J. Self and her bodily.
heirs.'' This was not known to Mrs. Self and was not
authorized by her and she did not receive the deed for
some time thereafter, and that upon learning of the
limitation that had been placed in the deed she insti-
tuted a suit to correct the mistake. As we view it, the
mistake was not one of law but one of fact. The
brother and father had caused to be inserted in the
deed words that were not in the contract and the court
in that case says that this was a fraud upon the rights
of Mrs. Self. This was not a mistake of Mrs. Self as
to the legal effect that these words might have in the
deed for she knew nothing about it. It was the insert-
ing of words in the deed that she had not agreed to,
and in view of the later holdings of the Supreme Court
we do not believe that it was intended by this decision
to lay down the doctrine that a mistake as to the legal
effect of an instrument could be reformed in a court of
equity. In the case of *Tilton v. Fairmount Lodge,* 244
Ill. 617, wherein it was sought to reform a deed, in
which a 99-year lease was executed, to make the con-
veyance, instead of a deed as should have been made,
there was no dispute in this case but what the parties
understood the kind of an instrument they were re-
ceiving, but were mutually mistaken as to the legal ef-
fect of the instrument. This question was squarely

presented in this case, and the court in passing upon that question says: "They each understood fully what language was to be contained in the instrument. It is true, the legal effect of that language is different from what they understood it to be or from what they intended. This cannot be said, in any sense, to be a mistake of fact. It was a mistake of law as to the legal effect of the language used and adopted by the parties and is not such a mistake as equity will relieve against. The general rule is that a mistake of law, pure and simple, is not adequate ground for relief. (Pomeroy's Eq. Jur., 3rd Ed., sec. 842.) 'If the words are written as the parties intended they should be written, or supposed they were written when they signed the contract, no matter how much they may be mistaken as to the meaning of those words, no relief can be granted, either at law or in equity. The construction of words is a matter of law; the insertion of words is a matter of fact. It is for mistakes of fact alone, that contracts may be reformed.' " It will be observed that in this opinion the court says that the insertion of words not authorized constitutes a mistake of fact, and the *Dinwiddie* case, above referred to, was of that character. It seems to us that the case of *Tilton v. Fairmount Lodge, supra,* settles the question conclusively here in controversy. This doctrine is fully sustained by the case of *Hackemack v. Wiebrock,* 71 Ill. App. 173, and numerous other cases. We believe that the decisions of the courts of Illinois are almost uniform, except as above noted, in holding that where the mistake is one of legal effect that it cannot be corrected in a court of equity. *Wood v. Price,* 46 Ill. 439; *Goltra v. Sanasack,* 53 Ill. 456; *Fowler v. Black,* 136 Ill. 363; *Tilton v. Fairmount Lodge, supra.*

It is said by counsel for plaintiffs that a different rule applies to insurance companies, and an authority in support of this is cited from a decision of the Iowa courts. We do not understand that in Illinois there

can be any difference between a mistake in an insurance contract and other contracts. An insurance policy will be liberally construed in favor of the assured, but construction will not make a new contract for the parties. *Schuermann v. Dwelling House Ins. Co.,* 161 Ill. 437. The language here used and indorsed upon the back of this policy did not constitute any contract at all. It was only a recitation of the fact that Watson had become the purchaser of the certificate.

It is said by counsel for plaintiffs that under the law the plaintiffs would have a right of action upon the contract independent of the written memoranda. If this be true, then it seems to us that their action would be at law, and there would be no need of reformation or conflict of interests as would require the case to be brought into a court of equity. If the plaintiffs had such a contract with the defendant as to protect their respective interests in the property, and they had a contract as contended, then proof could be made of their interests without calling upon a court of chancery.

We are also of the opinion that the consideration alleged in this bill, to wit, the unearned premium upon the policy owned by the Perrymans, would not be a sufficient consideration unless the Perrymans consented that it should become a consideration, as they were still as much interested in the property as Crossen was, as they also had the right to redeem from this sale, and there is no allegation in the bill of the Perryman's assent to this agreement.

Criticism is made by counsel, of the insurance company for not in good faith carrying out its agreement with the plaintiffs, and while it may be true that the insurance company could have done so, yet when the matter is presented for our consideration we must determine their rights according to the laws governing such cases.

We are of the opinion that the court did not err in

sustaining the demurrer to plaintiffs' bill, and the decree of the lower court is affirmed.

*Affirmed.*