HOMER ATHERTON

*v.*

FRANCIS D. ROCHE *et al.*

*Opinion filed October 24, 1901.*

1. DEEDS—*construction of deed to grantees "and their bodily heirs."* A deed to the grantor's daughter and her husband, "to them and their bodily heirs forever," passes, under section 6 of the Convey-ance act, a life estate to the grantees, with remainder in fee to their bodily heirs according to the common law, and cuts off chil-dren of the daughter by other husbands.

2. SAME—*equity will not ordinarily reform a mistake of law.* The use of the words "their bodily heirs" in a deed to the grantor's daugh-ter and her husband, "to them and their bodily heirs," under the impression that all children of the daughter, though by other hus-bands, would take, is a mistake of law and cannot be corrected in equity, where the grantor knew that the word "their" was used be-fore he signed the deed but insisted that he knew the legal effect thereof and that it expressed his meaning.

WILKIN, C. J., and BOGGS and CARTER, JJ., dissenting.

APPEAL from the Circuit Court of Alexander county; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

LANSDEN & LEEK, and DAVID S. LANSDEN, for the parties.

WILLIAM S. DEWEY, guardian *ad litem* for Homer Atherton.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by Francis D., Leslie and Leon Roche, minors, by their next friend, James S. Roche, in the circuit court of Alexander county, against

Homer Atherton and Fannie E. Jones, to reform a certain deed bearing date March 21, 1882, executed by Francis D. Atherton and Martha E., his wife, conveying ninety-nine acres of land off of the south side of lot 3, claim 529, survey 527, in Alexander county, Illinois, to Margaret E. and Byron J. Atherton, "to them and their bodily heirs forever," so that it would operate to vest the remainder in fee in said lands in all the heirs of said Margaret E., deceased, and that partition of the land described therein be made according to the rights and interests of the parties after such reformation of the deed should have been made. The defendant Fannie E. Jones entered her appearance and filed an answer admitting the allegations of the bill. The defendant Homer Atherton, who was duly served with summons, being a minor, a guardian *ad litem* was appointed for him. The answer of the guardian *ad litem* having been filed and a replication thereto, the cause was referred to the master in chancery to take and report proofs and his findings and conclusions of law. The proofs having been taken, the report of the master in chancery filed and exceptions overruled thereto, a decree was entered reforming said deed and appointing commissioners to make partition of said land equally between the complainants and defendants, on the basis that said Francis D. Roche, Leslie Roche, Leon Roche, Homer Atherton and Fannie E. Jones were each the owners in fee simple of the undivided one-fifth part of said land, from which decree Homer Atherton has prosecuted an appeal to this court.

The master in chancery found that Francis D. Atherton, the grandfather of the complainants and defendants, (now deceased,) was on the 21st day of March, 1882, the owner in fee simple of said land; that on said day, for the expressed consideration of ten dollars, he, together with his wife, Martha E. Atherton, conveyed said land to his daughter, Margaret E. Atherton, and Byron J. Atherton, her husband, and their bodily heirs; that said

Byron J. Atherton, the husband of Margaret E. Atherton, was not of kin or otherwise related to said Francis D. Atherton; that in said deed the party of the second part is described as "Margaret E. and Byron J. Atherton," and the granting clause therein is "to them and their bodily heirs forever," and the *habendum* clause recites that the said land is to be held to the only proper use, benefit and behoof of "the said party of the second part and their bodily heirs forever," and the relinquishment of homestead in the said deed is unto the said party of the second part and "their bodily heirs;" that the said Margaret E. Atherton was married three times, the first marriage being to David R. Peeler in the year 1878, by which marriage she had one child, a daughter, now Fannie E. Jones; that said Margaret E. Peeler was on the sixth day of December, 1881, granted a divorce from her husband by the circuit court of Alexander county, for his fault; that on the fifth day of February, 1882, she was married to Byron J. Atherton, by whom she had one child, a son, Homer Atherton, who was born on the second day of February, 1883; that said Byron J. Atherton died in the year 1884; that the said Margaret E. Atherton, on the third day of March, 1886, married James S. Roche, by whom she had three children,—Francis Roche, born in 1887, Leslie Roche, born in 1890, and Leon Roche, born in 1892; that said Margaret E. Roche died on the 16th day of June, 1894.

It is averred in the bill that said Fannie E. Peeler (now Fannie E. Jones) was highly esteemed and regarded and greatly loved by her grandfather, the said Francis D. Atherton, and that it was his intention and purpose when he made said deed to make provision thereby for said Fannie E. and any other child or children his daughter, Margaret E., might have, either by said Byron J. or any other husband whom she might have, and that when he executed said deed he supposed that the words "and their bodily heirs," as used in said deed, did or would in-

clude the said Fannie E. and any other child or children
whomsoever that might thereafter be born unto his said
daughter, and that the consideration named in the deed
was but nominal, and that the actual consideration was
the desire of the said Francis D. Atherton to make pro-
vision for his daughter, said Margaret, and for her chil-
dren, and that the word "their" in the phrase "their bodily
heirs forever," in the granting and *habendum* clauses of
the deed, was employed with the understanding and in-
tention on the part of said grantor in said deed that it
meant and included all bodily heirs of his said daughter.

George W. Harrison, the justice of the peace before
whom the deed in question was acknowledged, was called
as a witness. He testified he was well acquainted with
the grantor and with the grantees. He identified the
original deed as the instrument which was acknowledged
before him by said grantor. It was partly written and
partly printed. The words "their bodily," in each of the
clauses of the deed, were in writing, the words "heirs
forever" in print, and that he believed the written parts
of the body of the deed were in the handwriting of Byron
J. Atherton, one of the grantees. He further testified
as follows:

Q. "Where did you take the acknowledgment?

A. "I took Francis D. Atherton's acknowledgment in
his store, about one hundred and fifty yards from his resi-
dence, and then I proceeded to the residence and took
Mrs. Atherton's acknowledgment.

Q. "How did you happen to be at the store on that
occasion?

A. "I did my trading at the store, and was probably
there for the purpose of trading at the store.

Q. "State whether or not you and Francis D. Ather-
ton looked at or examined the deed, at his store, and had
any conversation about it.

A. "Yes, sir; we did.

Q. "State what he said to you about the deed, and give the conversation, or the substance thereof, as near as you can.

A. "His eyes were not very good, and he asked me to read the deed over to him, and I did so. When I came to the words 'and their bodily heirs,' I asked him if he didn't think that was wrong, and that it would cut Fannie Peeler, or any other children except Byron's, out. He said, 'No, it would not; I want all of Margaret's children to share alike in the land.' I asked him why he made the deed that way. He said, in reply, that he wanted Byron and Margaret to have a lifetime interest in the land, but so they could not sell it, and when they died he wanted her children to all share alike in the land.

Q. "When did that conversation take place—was it before or after you went to the house to take Mrs. Atherton's acknowledgment?

A. "It was just before Francis D. Atherton signed the deed at the store and before I went to the residence to take Mrs. Atherton's acknowledgment.

Q. "If in that conversation you made any suggestion to him about changing any word or words in the deed, please state what you said about the matter, and his reply.

A. "I suggested to him changing the word 'their' to 'her' in the expression 'their bodily heirs,' and he said that would not make any difference,—that her children would all share alike anyhow.

Q. "Do you remember of any one being present at that conversation?

A. "Yes, Byron Atherton and Tom Smithey were there, and all three of them argued against me about the effect of the word 'their,' claiming that it would make no difference and that all of her children would share equally."

The deed to Margaret E. and Byron J. Atherton, "to them and their bodily heirs forever," conveyed what would have been at common law an *estate tail special.*

(1 Coke on Litt. secs. 13-15, 283; 2 Preston on Estates, 413, 435-438; 2 Blackstone's Com. 113, 114; 2 Bacon's Abr. —1st Am. ed. 1811,—pp. 547, 548; Hopkins' Hornbook on Law of Real Prop. pp. 43, 44; *Lehndorf* v. *Cope*, 122 Ill. 317.) Under the operation of section 6 of an act entitled "Conveyances," (Hurd's Stat. 1899, chap. 30, p. 401,) however, instead of an *estate tail special* a life estate was vested in Margaret E. and Byron J. Atherton, the remainder in fee going to their bodily heirs according to the course of the common law. (*Frazer* v. *Peoria County*, 74 Ill. 282; *Lewis* v. *Pleasants*, 143 id. 271; *Dinwiddie* v. *Self*, 145 id. 290; *Kyner* v. *Boll*, 182 id. 171.) The bodily heirs referred to are not Margaret's bodily heirs nor Byron's bodily heirs, but "their" bodily heirs,—that is, the bodily heirs of both Margaret and Byron,—which language excludes Fannie E. Jones and Francis D., Leslie and Leon Roche, and applies only to Homer Atherton, who is the only person who comes within the description of "their" bodily heir, —that is, the bodily heir of both of them. The remainder in fee was contingent, but vested in Homer Atherton upon his birth. (*Dinwiddie* v. *Self*, *supra; Kellett* v. *Shepard*, 139 Ill. 433.) The effect, therefore, of said deed was to vest in Margaret E. and Byron J. Atherton a life estate and the remainder in fee in Homer Atherton, as their only bodily heir, who is now the sole legal owner in fee of said lands.

The legal title to said land being in Homer Atherton, was the court below warranted, upon the case made, in reforming the deed, and, after such reformation, in decreeing four-fifths of said lands to be the property of the other children of Margaret E. Roche? We think not. The mistake insisted upon and sought to be corrected consists in the use of the word "their" instead of "her," in the clause "to them and their bodily heirs forever," found in said deed, and under which Homer Atherton takes title. There is no claim that said grantor, at the time he executed said deed, was not fully aware of its terms and

language, or that he was in any way deceived, misled or otherwise imposed upon or subjected to any undue or improper influence. The evidence, on the other hand, clearly shows that the deed was read to him prior to the execution thereof, and that he knew the word "their" was used and that the word "her" was not used in said clause; that he discussed the meaning of the terms employed at the time he signed and acknowledged the deed, and insisted he knew the legal effect thereof and that it expressed his meaning. It is therefore apparent that the mistake complained of is not a mistake as to what words were contained in the deed, but simply as to the meaning and legal effect of the word "their" when used in the clause "to them and their bodily heirs forever." This, manifestly, is not a mistake as to any fact. It is purely a mistake of law, and the rule in this State, subject to certain exceptions, among which this case does not fall, is firmly established that courts of equity will not lend their aid to relieve against mere mistakes of law.

In *Fowler* v. *Black*, 136 Ill. 363, where the mistake sought to be corrected consisted in the use of the word "heirs" instead of "children," in a deed, Mr. Justice BAILEY, speaking for the court, on page 378 says: "The general rule, subject, it is true, to certain exceptions, is, that courts of equity will not lend their aid to relieve against mere mistakes of law. Mr. Justice Story, in discussing the rule and its exceptions, after analyzing and reviewing at considerable length the leading decisions bearing upon the question, reaches the conclusion that the rule is relaxed in cases where there is a total ignorance of title founded in a mistake of a plain and settled principle of law, and in cases of imposition, misrepresentation, undue influence, misplaced confidence or surprise. 'But,' says the learned author, 'it may be safely affirmed, upon the highest authority, as an established doctrine, that a mere naked mistake of law, unattended by any such special circumstances as have been above suggested,

will furnish no ground for the interposition of a court of equity.' (1 Story's Eq. Jur. secs. 137, 138.) The general rule above laid down has been frequently recognized and enforced by this court."

In *Sibert* v. *McAvoy*, 15 Ill. 106, on page 109 the court say: "If he misconstrued the contract as written, that was a mistake of law and not of fact, and for such mistakes equity can grant no relief. It is where parties intended to insert words in a contract which were by accident omitted that equity can reform the contract by inserting them or by expunging words they did not intend to have inserted. If the words are written as the parties intended they should be written, or supposed they were written, when they signed the contract, no matter how much they may be mistaken as to the meaning of those words, no relief can be granted, either at law or in equity. The construction of words is a matter of law; the insertion of words is a matter of fact. It is for mistakes of fact, alone, that contracts may be reformed."

In *Gordere* v. *Downing*, 18 Ill. 492, an agreement had been made for the sale of land. The parties went to a justice of the peace for the purpose of executing and acknowledging a deed. The grantor declined to make a deed containing covenants of warranty and directed the justice to prepare a quit-claim deed. The justice took a printed form for a deed of general warranty and filled it out by striking out the words "warrant and defend," and leaving language in the deed preceding these words which amounted, in law, to a covenant of title in fee. He then informed the parties that the deed so altered was the same, in effect, as a quit-claim deed. The parties then read the deed over, expressed themselves satisfied with it, and it was executed and delivered. It is said: "There is no ground of fraud in the bill or proofs or of mistake of fact, but it plainly appears that the parties and the justice were mistaken in the legal effect of the deed. Each party, for himself, read the deed and is

presumed to have known the language it contained; but the legal effect of that language is different from what they understood it to be or intended. They knew the facts, the parties to the deed, the consideration, the description of the land. They knew what words of covenant were stricken out of and what remained in the deed, but they were mistaken in the law,—in the legal consequence of retaining those words in the deed. This was a mistake of law in the legal effect of the language used and adopted by the parties, which, in the absence of fraud, and where there is no mixture of oppression, confidence abused or surprise in matters of fact, equity will not relieve against. This rule is too well settled to admit of argument."

In *Goltra* v. *Sanasack*, 53 Ill. 456, the complainants, who were children by a former marriage, filed a bill for the purpose of having a deed reformed, and it was alleged that their father purchased the land and intended to have the same conveyed to his wife and his children, but contrary to his intention it was conveyed to his wife and her heirs, and not to her and all his children. In denying the relief prayed for it is said, on page 458: "The rule is inflexible that a mistake or misapprehension of the law is never relieved against or corrected. If a party designs to and performs an act under a mistaken view of the law affecting the transaction he is held to the obligation incurred. As a matter of necessity all persons are presumed to know and act in view of the law, and the maxim is, that ignorance of the law excuses no one."

In *Purvines* v. *Harrison*, 151 Ill. 219, on page 223 the court say: "To justify the reformation of a written instrument upon the ground of mistake, it is necessary, first, that the mistake should be one of fact and not of law; (*Sibert* v. *McAvoy*, 15 Ill. 106;) second, that the mistake should be proved by clear and convincing evidence; (2 Pomeroy's Eq. Jur. sec. 862;) third, that the mistake should be mutual and common to both parties to the in-

strument. (*Sutherland* v. *Sutherland,* 69 Ill. 481.)   A mistake of law is an erroneous conclusion as to the legal effect of known facts. (*Hurd* v. *Hall,* 12 Wis. 113.)   The construction of words is a matter of law. (*Sibert* v. *Mc-Avoy, supra.*)   Where parties instructed an officer to prepare a quit-claim deed for their execution, but he drew a deed containing language which amounted, in law, to a covenant of title in fee, and they signed the deed knowing that such language was in it, they were held to have been mistaken in the law,—that is to say, in the legal effect of the language used and in the legal consequences of retaining such language in the deed.— *Gordere* v. *Downing,* 18 Ill. 492."

In *Seymour* v. *Bowles,* 172 Ill. 521, on page 524 it is said: "The allegation in the bill that in drafting the deed the word 'heirs' was mistakenly used for 'children' presents no case for the correction of a mistake or reformation of the deed.   The alleged mistake is one of law, and can not be corrected.".

In *Butterfield* v. *Sawyer,* 187 Ill. 598, on page 602 it is said: "In giving construction to deeds we are confined to the terms of the instrument itself, the object being to ascertain the intention of the grantor as expressed by the language used, and not the unexpressed purpose which may at the time have existed in his mind.   Where there is no ambiguity in the terms used, or where the language used has a settled legal meaning, the instrument itself is the only criterion of the intention of the party."

The cases of *Dinwiddie* v. *Self, supra,* and *Kyner* v. *Boll, supra,* relied upon by appellees, can readily be distinguished from the case at bar.   In the *Dinwiddie case* an unmarried woman purchased of the defendant a fee simple title to a 220-acre farm for $9000, that being the full value thereof.   She entrusted her brother to close the purchase, and gave him instructions to have the lands conveyed to her absolutely in fee, as her sole and separate property.   Without her knowledge or consent he

accepted a deed which conveyed the lands to the complainant and "her bodily heirs." On a bill in chancery the court reformed said deed so as to convey to the complainant a fee instead of a life estate in said farm, on the ground that the limitation to the "heirs of her body" was inserted in the deed wholly without her knowledge, authority or consent. In discussing the right of the complainant to such relief, the court, on page 304 of the opinion, say: "If * * * she had personally requested the insertion of this limitation or had accepted the deed with full knowledge of its terms she would have been bound by the instrument as executed, however much she may have been mistaken as to the legal effect of the language thus employed." In the *Kyner case* the grantor in the deed sought to be reformed, so soon as he discovered that the same was made to the grantee and her "bodily heirs," carried the same back to the justice of the peace who had prepared the same and before whom the same had been acknowledged, and requested that the word "bodily" be stricken out of the deed, and upon the justice declining to strike out such word the grantor immediately caused to be executed and delivered to the grantee another deed conveying to the said grantee the premises sought to be conveyed, in fee. In both of these cases words were inserted in the deeds sought to be reformed, without the procurement, knowledge or consent of the grantees, which limited the title to a life estate in the grantee when it was the intention of the grantor to convey the fee, and the court in each case, upon well recognized principles, properly expunged such words of limitation therefrom. In the case at bar the deed was written as the grantor intended it should be written. He knew its contents, but was mistaken as to the legal effect thereof. "It is where parties intended to insert words in a contract which were by accident omitted that equity can reform the contract by inserting them or by expunging words they did not intend to have inserted. If the

words are written as the parties intended they should be written or supposed they were written when they signed the contract, no matter how much they may be mistaken as to the meaning of those words, no relief can be granted, either at law or in equity." *Sibert* v. *McAvoy, supra.*

It is clear from the foregoing authorities, and many more which might be cited, that this is not a case for equitable relief, and that the decree reforming said deed is erroneous. The decree will therefore be reversed and the cause remanded to the circuit court, with directions to that court to dismiss the bill for want of equity.

*Reversed and remanded.*

Mr. JUSTICE BOGGS, dissenting:

The transaction here involved is a voluntary gift by a father to his daughter. The donor had complete right to dictate the conditions of the gift—even to entirely withhold it. That which he intended to do is not, under the evidence, a matter of doubt. The deed which he caused to be prepared for the purpose of executing that intention was so framed as to defeat his intention. Of that there is no doubt. He had the clearest comprehension of what he intended to do, but he labored under a misapprehension as to the meaning which would be given in law to the word "their." He was not mistaken as to any general legal principle applicable to and controlling the subject matter of the transaction in which he was engaged, but he fell into a mistake as to the language necessary to effectuate his intention. Even if it be conceded it was a mistake of law, there was no mistake as to any legal principle affecting the transaction itself.

The declaration so frequently made by courts and law writers that a mistake of law cannot be relieved against must not be understood to mean a mistake as to the legal effect of the language employed in drafting an instrument, but a mistake or misapprehension as to the legal principle involved in the subject matter of the contract which the instrument was executed to witness and effect-

uate. Ignorance or error with respect to the general rules of law controlling a transaction or agreement can not be relieved against in equity. A mistake as to the legal effect of the real agreement or as to the legal results of the act one performs does not present any ground for affirmative relief in chancery. If a mistake occurs, however, in preparing or framing a written instrument necessary to evidence an agreement upon which the minds of the parties have met, such mistake, though a mistake of law, may be corrected in equity. Mr. Pomeroy, in his work on Equity Jurisprudence, (vol. 2, sec. 845,) says: "If an agreement is what it was intended to be, equity would not interfere with it because the parties had mistaken its legal import and effect. If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, *by means of a mistake of law*, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of *the contract actually made*, but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter and as to the import of technical words and phrases; but the rule is not confined to these instances." In *Dinwiddie* v. *Self*, 145 Ill. 290, this court quoted with approval the above quotation from

Pomeroy's Equity Jurisprudence, and in *Kyner* v. *Boll*, 182 Ill. 171, we again incorporated the same quotation in full in the opinion as expressing the views of this court on the question, and we also quoted with approbation the remarks of Mr. Chief Justice Shaw in *Canady* v. *Marcy*, 13 Gray, (Mass.) 373, that "a mistake in the legal effect of a description or in the use of technical language may be relieved against, upon proper proof." Mr. Beach, in his work on Modern Equity Jurisprudence, (vol. 2, sec. 540,) says: "And, moreover, where parties have made an agreement, and there is no allegation of any mistake in it, and in reducing it to writing they, by mistake, either because they did not understand the meaning of the words used or the legal effect thereof, failed to embody their intention in the instrument, equity will grant relief by reforming the instrument and compelling the parties to perform their agreement as they made it; and it matters not whether such mistake be called one of law or fact."

Perhaps no clearer statement of the rule, as we who dissent conceive it to be, can be found than that given in *Abraham* v. *North German Ins. Co.* 40 Fed. Rep. 717, as follows: "In entering into contracts, parties are deemed to know the principles established by law, and contracts are construed with reference to the law applicable to the subject matter of the contract, and therefore, in that sense, the law as it actually is enters into and forms part of the contract that the parties make. If, however, in a given case the parties actually mistake or misunderstood the principle of law applicable to the subject matter of the contract and reach an agreement relying upon this mistake of the law, there is no ground upon which a court of equity can reform the contract. The court cannot know whether the parties, if they had correctly understood the law, might have entered into any contract on the subject, or what terms they might have reached touching the same. While the court, therefore, might be entirely satisfied that the parties, had they, in

fact, understood the principles of law applicable to the case, would not have made the contract they did make, the court cannot know what contract they would have made, if any, and therefore, in such case, the court can not reform the contract, although it might be justified in setting it aside. When, however, the mistake lies, not in a misunderstanding of the principles of the law as controlling the subject of the contract or the rights of the parties connected therewith, but merely in the terms proper to be used in defining the actual contract of the parties, such a mistake, though in one sense a mistake of law, is one that a court of equity will correct."

The quotation from Story's Equity Jurisprudence incorporated in the opinion of the majority of the court in this cause is in nowise inconsistent with the rule as stated by Pomeroy and Beach. The mistake of law referred to by this learned writer is a mistake as to the general principle of law relating to and controlling the subject matter of the contract. In fact, Judge Story, in commenting upon the case of *Hunt* v. *Rousmaniere's Admr.* 8 Wheat. 174, laid down the same doctrine as that announced in the works of Beach and Pomeroy, as follows: "Equity may compel parties to execute their agreements, but it has no authority to make agreements for them or substitute one for another. If there has been any mistake in the instrument itself, so that it did not contain what the parties had agreed on, that would have formed a very different case, for if an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by mistake of the draftsman, either as to fact or to law, does not fulfill that intention, or violates it, equity will correct the mistake so as to produce a conformity to the instrument." (1 Story's Eq. Jur.—13th ed.—sec. 115.) These great text writers are in harmony on the point.

The author of the article entitled "Mistake," in 15 Am. & Eng. Ency of Law, (1st ed.) p. 643, says: "In fact, it

may be said that a court of equity will correct or reform an instrument which does not express the true intent of the parties, whether such mistake arises from ignorance of law or of fact."

In *Burdett* v. *Simms*, 3 J. J. Marsh. 190, the parties knowingly employed the words "current money of Kentucky," in a note, with the understanding the words meant "current bank paper," and the note was reformed in chancery according to the real understanding of the parties.

In *Stafford* v. *Fetter*, 55 Iowa, 484, words were adopted and used by the parties in making an assignment of a promissory note, in the belief the legal effect of the words so used was to effectuate a transfer of the note without recourse on the assignor, but to which words the law gave the contrary legal effect, and the assignment was so reformed as to give expression to the actual intent of the parties.

In *Stedwell* v. *Anderson*, 21 Conn. 139, the facts were: Four sisters, three of whom were married, were joint owners of certain real estate. They agreed to divide the property and convey each to the other. "When the parties met for the purpose of executing the deeds a discussion arose whether the names of the husbands should be in the deeds or not. Some were of the opinion that they ought to be inserted, but all of them were ignorant of the legal effect of the deeds as prepared, and were of opinion that the insertion of the husbands' names would do no hurt, and that the deeds, so prepared, would carry out the agreement of the parties. The defendant insisted that unless the names of the husbands were inserted the deeds would be good for nothing. When this discussion was had it did not appear that any distinction was made between the insertion of the names of the husbands as grantees or grantors, but the married sisters were desirous of having the deeds carry into effect their agreement, and so expressed themselves, and they all executed the

deeds, in which the husband appeared with the wife as a grantee, believing that they merely carried into effect the partition among the sisters." The deeds to the married sisters were so drawn as to convey the share of each sister to her and to her husband. The legal effect, under the then existing law of Connecticut, was to give to each husband an estate in fee in the tract set apart to the wife. The parties believed the legal effect of the insertion of the names of the husbands in the deeds was to convey to the husbands only the interest they were entititled to by virtue of their marital rights. It was held there was jurisdiction in equity to reform the deeds so as to correct the mistake of law and make the instruments conform to the intention of the parties.

*Clayton* v. *Freet*, 10 Ohio St. 544, was a petition to correct a mistake in a deed. The evidence established a mistake in drafting the deed, but it was a mistake of law, and it was urged it could not be corrected. The court said: "As to the first point, adopting the language of the court in the case of *Canady* v. *Marcy*, 13 Gray, 373, 'we are of opinion that courts of equity, in such cases, are not limited to affording relief in case of mistake of fact, and that a mistake in the legal effect of a description in a deed or in the use of technical language may be relieved against.' The learned Chief Justice Shaw, in support of that proposition, cites *Hunt* v. *Rousmaniere*, 1 Pet. 1; *Gillespie* v. *Moon*, 2 Johns. Ch. 596; *Stedwell* v. *Anderson*, 21 Conn. 139; *Oliver* v. *Mutual Commercial Marine Ins. Co.* 2 Curt, C. C. 299. To these authorities may be added *Cook* v. *Husbands*, 11 Md. 492; *Springs* v. *Harven*, 3 Jones' Eq. 96; *Young* v. *Miller*, 10 Ohio, 85; *McNaughten* v. *Partridge*, 11 id. 223."

In *Evans* v. *Strode*, 11 Ohio, 480, both parties knew the terms used in a conveyance of land, but were clearly mistaken as to the legal effect and operation of the words used. The court held the mistake was one of law, but that it was relievable in equity, and so decreed.

Many other cases adjudicated in the courts of last resort in other States of the Union are cited by Mr. Pomeroy and Mr. Beach in support of the doctrine announced by them, but those mentioned serve to illustrate the principle and the trend of judicial decisions on the point. Decisions holding to the contrary are to be found,—some in our own court; but it seems clear that in the better reason and on much the greater weight of authority it must be said, in all of such cases the adjudication proceeded upon an erroneous view as to the true meaning of the well established rule that a mistake of law cannot be relieved against,—that is, that parties are presumed to contract with reference to the legal principles which control the subject matter of the transaction, and that such legal principles enter into and form an inseparable part of their contract, and it is not within the power of the court to make a new contract for the parties. A mistake as to such legal principles cannot be corrected, but a mistake as to the legal meaning and effect of words selected by the parties in drafting written instruments to evidence the agreements into which they have entered, though mistakes of law, do not enter into and become part of the contract, and such instruments may be so reformed that they will declare the true and real agreement or undertaking of the parties.

The testimony mentioned in the opinion of the majority of the court clearly establishes the intention of the donor of this gift, and the record contains much other proof, all to the same effect. It is, it seems to me, within the power of a court of equity to so reform the deed as to carry that intention into effect.

WILKIN, C. J., and CARTER, J., concur in the dissenting opinion of Mr. Justice BOGGS.