## BAGBY et al. v. MARTIN.

No. 17132—Opinion Filed June 15, 1926.

**1. Contracts—Statute as Part of Contract with Contemporaneous Judicial Construction.**

Contracts entered into in good faith, in relation to private property rights, in accordance with a statute as construe by the Supreme Court of the state, will be given effect according to the judicial construction of the statute in effect at the time the contract was entered into. A later construction of the statute by the same court, applying a different construction, will not affect the contract made pursuant to the former decision.

**2. Reformation of Instruments—Contracts—Mistake in Effect of Terms—Equitable Relief.**

If parties, who mutually agree on the terms of a contract, choose and use legal phrases and terms in the contract which, in legal effect, express a meaning different from that agreed upon, a court of equity will grant proper relief in the premises.

## 3. Same—Fraudulent Representation by one Party as to Legal Rights.

If a party to a contract willfully leads the other party into a misconception of his legal rights in relation to the matters contracted about, through false and fraudulent misrepresentations, the wrongdoer will not be permitted to rely on the general rule that a mistake of law by one of the parties will not support a rescission or cancellation of the contract.

## 4. Disposition of Cause.

Record examined; held, to be sufficient to support judgment in favor of the defendant.

Error from District Court, Tulsa County: Luther James, Judge.

Action by Oliver Bagby et al. against Laura Martin to quiet title. Judgment for defendant, and plaintiffs bring error. Affirmed.

J. S. Severson and O. C. Essman, for plaintiffs in error.

Wm. Blake, for defendants in error.

Opinion by STEPHENSON, C. Clydie Howell, a duly enrolled Creek freedwoman, was allotted land situated in what is now Tulsa county. The allottee died about April 5, 1911, leaving her noncitizen husband, and her mother, Laura Martin, as her next of kin. The husband asserted ownership to an undivided one-half interest in the allotment, as an heir of his wife, and sold and conveyed the interest to Oliver Bagby and J. S. Thomason on April 27, 1911, for the consideration of $1,500.

The plaintiffs in error claimed ownership to the undivided one-half interest, received rents and profits therefrom, paid taxes thereon, and the interest on an existing mortgage, until this court construed the statute of inheritance applicable to Creek citizens, to exclude a noncitizen who occupied the status of the husband of the allottee in this case, from inheriting an interest in lands from a Creek citizen. The mother of the allottee acquiesced in the claims of the plaintiffs in error until this court construed the status as above stated.

J. S. Thomason died sometime after receiving the deed of conveyance, leaving a wife and children, as his next of kin, who are plaintiffs in error. Bagby and the heirs of Thomason refused to pay their one-half of the interest on the existing mortgage after the decision by this court, which had the effect of excluding the husband of the allottee as an heir of the latter. The defendant insisted upon the plaintiffs in error giving a quitclaim deed to her, covering the allotment in question, in order that the records might be cleared of the appearance of any claims in the property by the plaintiffs in error. A quitclaim deed was executed by the plaintiffs in error to the mother of the allottee, covering the land allotted to her deceased daughter, for a consideration of $250. There may be some dispute among the parties as to whether the $250 was treated as a reimbursement of the plaintiffs in error for taxes paid on the interest claimed, and for interest paid on the existing mortgage, prior to the decision referred to, or was for the relinquishment of any and all claims of whatsoever nature in and to the property. However, we do not think these distinctions, if any, are material in the consideration of the questions involved in this appeal.

This court, after the execution and delivery of the quitclaim deed, reconsidered the question of the construction to be placed on the Creek inheritance law in another appeal, and construed the statute to include as heirs, persons belonging to the same class as the husband of the allottee in this case. The effect of the later decision, except for the quitclaim deed, was to perfect the claims of the plaintiffs in error into a perfect title to an undivided one-half interest in and to the lands of the deceased allottee. Thereafter, Oliver Bagby and the heirs of J. S. Thomason commenced an action against Laura Martin, the mother of the deceased allottee, to quiet the title in and to an undivided one-half interest in the allotment, and to cancel the quitclaim deed executed and delivered to the defendant.

The plaintiffs in error for their right of action alleged in substance: That the quitclaim deed was executed and delivered to the defendant as the result of a mistake of law on the part of the grantors, and that the defendant was threatening to institute a suit for quieting title in the land against the plaintiffs, unless the latter cleared the record of evidence of their claims in the property. The plaintiffs allege that the deed was executed and delivered as the result of a mistake of law on their part, and duress resulting from the threats of the defendant to institute suit to quiet title against the grantors. The trial of the cause resulted in judgment for the defendant. The plaintiffs perfected their appeal to this court, and assign as error for reversal, that the judgment is contrary to the facts, and contrary to the law.

The proposition of law submitted by the plaintiffs in error for reversal of the judgment, in their language is:

"That equity will afford relief for a mistake of law where the mistake is mutual, and the parties would not have entered into the transaction but for the mistake, where the granting of such relief will prevent one of the parties from becoming unjustly enriched at the expense of the other, because of the innocent mistake entertained by both."

The defendant in error answers the foregoing contention with the following proposition:

"A mere mistake of law not accompanied with other circumstances demanding equitable relief, constitutes no ground for rescission, cancellation, or reformation of the deed to lands based upon such mistake."

The phrase, "with other circumstances demanding equitable relief," as used in the case of Campbell v. Newman, 51 Okla. 121, 151 Pac. 602, authorizes a court of equity to reform, or cancel, contracts which result from a mistake of law, where such circumstances as referred to enter into the contract along with the mistake of law. For instance, if parties who mutually agree on the terms of a contract choose and use legal phrases and terms in the contract, which, in legal effect, express a different meaning from that agreed upon, a court of equity will reform or cancel the contract according to the equities of the case. Pomeroy's Equitable Remedies, section 677.

If a party to a contract willfully leads the other party into a misconception of his legal rights, through false and fraudulent misrepresentations, the wrongdoer will not be permitted to rely on the general rule that a mistake of law by one of the parties will not support a rescission or cancellation of the contract. A party to a contract, who has knowledge of the ignorance of the other party as to the law pertaining to the contract, must refrain from misrepresentations as to the law and rights of such party in the premises. Titus v. Rochester German Ins. Co., 28 L. R. A. 478, 97 Ky. 567, 31 S. W. 127. A mistake of law may be defined as an erroneous conclusion, as to the legal effect of known facts. Atherton v. Roche, 55 L. R. A. 591, 192 Ill. 252, 61 N. E. 357. The acts of the parties in this case, under the circumstances, do not bring them within the definition of a mistake of law.

The law of our state is defined by statute to be the Constitution, the statutes, and common law, as modified by judicial decisions. A judicial construction of a statute by the Supreme Court of a state becomes a part of the statute, and operates on property and personal rights with the same degree of force as an unambiguous statute, which does not require judicial construction.

The first decision by this court construing the Creek inheritance statute was the rule for determining and settling property rights until modified. So long as the construction of the statute of inheritance stood, as applied by the first decision, it fell with that force on all property rights, equal to the second construction by this court on the same question. Until the first decision on this question, the claims by the plaintiffs in error in the property were a debatable question between the parties. But the decision settled the question against the plaintiffs in error. The plaintiffs in error were informed of the decision, and knew that the construction placed upon the statute foreclosed their claims in the property. Pursuant to the effect of the decision, they relinquished all claims of record in and to the property. The plaintiffs in error had the choice of one of two courses: either to relinquish the claims of record, or relitigate the question in another appeal; they elected to pursue the former course. Whether they should have pursued the one, or the other, was a matter addressed to their judgment, for their own decision.

This appeal does not present the question of a mistake of law between the parties. The question relates to the effect of a judicial decision by the Supreme Court of the state on contracts made pursuant to a former decision by the same court which has been overruled by the later decision. The question is, Whether the quitclaim deed should be measured by the statute as construed by this court, and in effect at the time the deed was executed and delivered, or whether a later decision, which overruled the first should be given retroactive force.

It was said in the case of Haskett v. Maxey, 134 Ind. 182, 33 N. E. 358, 19 L. R. A. 379:

"Courts of last resort are often constrained to change their rulings o the questions of the highest importance. When this is done, the general rule is that the law is not changed, but that the court was mistaken in its former decision, and that the law is and always has been as expounded in the last decision. But to this general rule there is a well established and well understood exception."

The court stated the exception in the following language:

"This exception is that, after a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself; and a change of decision is, to all intents and purposes, the same, in its effect, on contracts as an amendment of the law by means of legislative action." Douglas v. Pike County, 101 U. S. 677, 25 L. Ed. 968; Anderson v. Santa Anna Twp., 116 U. S. 361, 29 L. Ed. 634; Ohio L. Ins. & Trust Co. v. DeBolt (U. S.) 16 How. 432, 14 L. Ed. 1003; Gelpecke v. Dubuque, 68 U. S. (1 Wall.) 175, 17 L. Ed. 520; Havenmeyer v. Iowa County supra, 70 U. S. (3 Wall.) 294, 18 L. Ed. 38; Olcott v. Fond du Lac County, supra, (U. S.) 16 Wall. 678, 21 L. Ed. 382; Taylor v. Ypsilanti, 105 U. S. 72, 26 L. Ed. 1012.

In the case of Ohio Life Ins. & Trust Co. v. DeBolt, 16 How. (U. S.) 432, 14 L. Ed. 1003, the court disposed of a question similar to the one presented by this appeal in the following language:

"The sound and true rule is that if a contract, when made was valid by the laws of the state as then expounded by all the departments of its government and administered in its courts of justice, its validity and obligations cannot be impaired by any subsequent Act of the Legislature, or by the decision of its courts altering the construction of the law."

As to whether a decision by the highest appellate court of a state should be given retroactive or prospective effect, the Supreme Court of the United States in the case of Douglas v. Pike County, 101 U. S. 677, 25 L. Ed. 968, said:

"The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective but not retroactive."

Haskett v. Maxey, supra, involved the construction of a descent statute in effect in the state of Indiana. The construction first placed on the statute by the Supreme Court of Indiana was to the effect that the second wife took only a life estate in the decedent's real estate, if the children left by the decedent were from a former marriage. The plaintiffs in error, acting on the construction, treated the widow as taking a life estate in the real estate, and the children by a former marriage, the fee title. The wife conveyed her life estate by a quitclaim deed, and the fee was acquired by a conveyance from the children. The Supreme Court later held that the statute treated the children by a former marriage as the forced children

of the widow, and entitled her to inherit the fee simple title in and to one-third of the deceased husband's estate. After the later decision, the plaintiffs in error commenced their action to cause the court to cancel the quitclaim deed of the widow and to decree that she inherited an undivided one-third interest in the property. The court refused the claims of the plaintiff in error on the ground that the deed was entered into according to the statute as it was construed at the time. The case of Haskett v. Maxey, supra, presented a question similar to the one here involved.

The rule applied in the Maxey Case was approved by the Supreme Court in the case of Ruf et al. v. Muller (Ind.) 96 N. E. 613. On the particular question in the latter case, it is said:

"On this subject the doctrine announced in the case of Haskett v. Maxey, 134 Ind. 182, 23 N. E. 358, 19 L. R. A. 379, is founded in reason, consistent with justice, and especially applicable to the facts in this case."

Sutherland, on Statutory Construction, section 319, states the rule to be:

"To divest them by a change of the construction, is to legislate retroactively. The constant barrier to legislation impairing the obligations of contracts, applies also to decisions altering the law as previously expounded, so as to effect the obligation of existing contracts made on the faith of the earlier adjudication."

In the case of State v. O'Neill (Iowa) 126 N. W. 454, the court said:

"It is quite fundamental, I think, that the judicial construction of a statute becomes a part of it, and as to the rights which accrue afterwards, it should be adhered to for the protection of those rights."

The court said in relation to this question:

"As further supporting this view, see Green v. Neal, 31 U. S. 291, 8 L. Ed. 404; Shelby v. Guy, 11 Wheat. 368, 6 L. Ed. 497. In the case of Ohio L. Ins. Co. v. DeBolt, 16 How. 432, 14 L. Ed. 997, Chief Justice Taney said: 'That the sound and true rule was that if the contract when made was valid by the laws of the state as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligations cannot be impaired by any subsequent act of the Legislature or decisions of its court altering the construction of the law'."

A similar question was before the Supreme Court of Alabama in the case of Farrier v. New England Mortgage Co., 92 Ala. 176, 9 South. 532, 12 L. R. A. 856

The court in disposing of the question said:

"After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment. The following authorities hold the same rule: Olcott v. Fond du Lac County, supra, (U. S.) 16 Wall. 689, 21 L. Ed. 386; Fairfield v. Gallatin County, 100 U. S. 52, 25 L. Ed. 546; Supervisors v. U. S. 85 U. S. (18 Wall.) 71, 21 L. Ed. 771; Gelpoke v. Dubuque (U. S.) 1 Wall. 206, 17 L. Ed. 525."

The cases of Schram v. Steele (Wash.) 166 Pac. 635, and Oliver v. Louisville Realty Co. (Ky.) 161 S. W. 570, support the rule applied in the Maxey Case.

7 R. C. L. section 36, page 1010, states the rule:

"Thus, for instance, the construction of a statute of descent established by the decisions of the courts at the time of a quitclaim deed by heirs claiming under the statute, becomes a part of the contract and must govern the rights of the parties as against a different construction thereafter adopted by overruling the former decisions. The true rule in such case is held to be to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative repeal or amendment; that is to say, make it prospective but not retroactive."

The rights of the parties in this appeal in relation to the quitclaim deed must be determined by the construction placed on the Creek statute of inheritance by this court, as it existed at the time the deed was executed and delivered by the defendant. The effect of the rule operates to cause the affirmance of the judgment.

By the Court: It is so ordered.

Note.—See under (1) 13. C. J. p. 261 §40; 6 R. C. L. p. 856; 2 R. C. L. Supp. p. 229; 5 R. C. L. Supp. p. 374. (2) 34 Cyc. p. 909: anno. 28 L. R. A. (N. S.) 785; 6 R. C. L. p. 630. (3) 34 Cyc. p. 920. (4) 32 Cyc. p. 1372.