Katherine PENNER and Henry C. Penner, Plaintiffs in Error,

v.

STATE of Oklahoma ex rel. COMMISSIONERS OF LAND OFFICE of said State, Board of County Commissioners of Custer County, Oklahoma, Jesse Hatchett, County Treasurer of Custer County, Oklahoma, H. H. Darks and H. L. Hunt, Defendants in Error.

No. 36827.

Supreme Court of Oklahoma.

Nov. 15, 1955.

Rehearing Denied Oct. 9, 1956.

Meacham, Meacham & Meacham, Clinton, for plaintiffs in error.

R. H. Dunn, A. M. DeGraffenried, N. A. Gibson, Oklahoma City, for State of Oklahoma ex rel. Commissioners of Land Office of, said State, defendants in error.

Arney & Barker, Clinton, Max Darks, Holdenville, Shank, Dedman & Payne, Dallas, Tex., for defendants in error, H. H. Darks and H. L. Hunt.

HALLEY, Justice.

This is an appeal by Katherine Penner and husband from a judgment of the District Court of Custer County, Oklahoma. They had sought a decree adjudging them to be the owners of all the surface and one-half of the minerals in 160 acres of land and quieting their title thereto.

Plaintiffs named as defendants the State ex rel. Commissioners of the Land Office, the County Commissioners and County Treasurer and H. H. Darks. Judgment was rendered against the County Commissioners and the County Treasurer and they filed no motion for a new trial and no cross-appeal, and need not be mentioned further in this opinion. H. L. Hunt was made a party defendant and filed a cross-petition and is a party to this appeal. The Commissioners of the Land Office will be referred to as Commissioners, the plaintiffs as the Penners and the other parties by name.

The judgment of the trial court was against the Penners on their claim to one-half of the minerals, and H. L. Hunt was given a money judgment against them in the sum of $760 and $125 attorney fees, and the Commissioners were adjudged to be the owners of the surface and one-half of the minerals, subject to their Certificate of Purchase to the Penners, who were adjudged to own a right in the surface rights only, and H. H. Darks was held to own one-half of the minerals, subject to oil and gas lease in favor of H. L. Hunt. Motion for a new trial by the Penners was overruled and they have appealed.

A brief history of what preceded the present action is deemed necessary to an understanding of the issues presented.

K. V. Lucas and wife had acquired a one-half interest in the mineral rights on December 17, 1928, and it was admitted that the party who conveyed to them had acquired title to one-half of the minerals prior to the mortgage in favor of the Commissioners which was later foreclosed. It is not disputed that K. V. Lucas and wife, who conveyed a one-half interest in the minerals to H. H. Darks, had a good title thereto prior to the date of said mortgage.

This undivided one-half interest in the minerals had already been severed from the land when the Commissioners accepted a mortgage from the owners of the surface rights and one-half of the minerals. This mortgage was foreclosed and H. H. Darks was named as a party defendant. He contacted the Commissioners and was informed that the foreclosure action would be dismissed as to him prior to judgment. This was not done and foreclosure judgment covered the surface rights and all of the minerals.

H. H. Darks evidently relied upon his agreement with an attorney for the Commissioners, defaulted and the foreclosure judgment obtained by the Commissioners apparently covered all interest in the land, which was advertised and sold in 1935, and sheriff's deed completing the sale undertook to convey to the Commissioners a complete title to both the surface and all of the minerals.

In 1942, the Commissioners issued a notice of sale of this and other tracts of land, stating that the purchaser would receive "an undivided 50 per centum of all oil and gas and other minerals."

At the public sale had under this notice, the plaintiff, Katherine Penner, became the purchaser. She was issued a Certificate of Purchase, reserving to the Commissioners 50 per cent of all minerals.

In 1946, H. H. Darks filed a suit in the District Court against the Commissioners to cancel the sheriff's deed in the foreclosure proceedings in so far as it covered his one-half interest of the minerals. Only the Commissioners were made a party defendant. In 1948, judgment was rendered for Darks decreeing that he owned one-half of the minerals. The Penners apparently had no notice of this suit and in 1946, they had executed an oil and gas lease to H. L. Hunt covering one-half of the minerals.

The Penners claimed that they had no notice of the claim of Darks and no knowledge that they did not own one-half of the minerals until the early part of 1954, when they filed the present action, praying that they be adjudged to own all of the surface rights and one-half of the minerals.

The Commissioners answered and alleged that at the time of their sale to the Penners they believed that they owned all of the minerals and set up the judgment in favor of H. H. Darks, which left the Commissioners only one-half of the minerals, which they were required to reserve under Chapter 28, Art. 3, Section 19(d), Session Laws of 1935, 64 O.S.1951 § 82(d). H. H. Darks answered and set up his ownership of one-half of the minerals and his judgment therefor against the Commissioners.

The parties entered into a stipulation covering practically all of the history of the facts involved, and it was agreed that copies of all the proceedings mentioned in the foreclosure suit and the suit of H. H. Darks against the Commissioners be admitted in evidence, along with copies of oil and gas leases executed by the Penners and H. H. Darks to H. L. Hunt and the amount of delay rentals and bonuses paid to lessors by Hunt, who had paid to the Penners $760 and to H. H. Darks the sum of $600. It was agreed that there had been no production.

It was expressly agreed that the conveyance of one-half of the minerals claimed by H. H. Darks preceded the acquisition of any interest in the land by the Commissioners by their mortgage and that when H. H. Darks was made a party defendant

in the foreclosure proceedings by the Commissioners, an attorney for the Commissioners advised him that the foreclosure action would be dismissed as to him, but that such promise was not kept.

Plaintiffs complain of the decree in that it holds that the Commissioners did not by their sale to the Penners convey any interest in the minerals. This question is discussed under two propositions, (A) and (B). Under (A) it is contended that when the Commissioners sold the surface and one-half of the minerals in 1942, it was the law of Oklahoma by judicial construction of Sections 10, 176, 231 and 265, Title 12 O.S.1951, that in a foreclosure action under facts here involved, the question of paramount title could be litigated and foreclosure judgment could not be collaterally attacked by a party served but who defaulted. In support of this proposition, Ciesler v. Simpson, 187 Okl. 641, 105 P.2d 227, is cited as the law in effect, when the sale to Katherine Penner was made despite the fact that in a later decision the law was construed differently.

Under (B) it is asserted that the Commissioners had authority to decide in good faith what mineral interest they owned and could sell, and upon such decision made a sale, this decision was binding and the sale made thereon valid.

There appears to be no question but that the question of paramount title may be litigated in a mortgage foreclosure action, and that the property rights acquired in compliance with one construction of a statute may not be lost on the ground that a different construction was later given to the same statute, as held by this Court in Ciesler v. Simpson, supra, and Bagby v. Martin, 118 Okl. 244, 247 P. 404.

However, our attention is called to the fact that in the foreclosure action by the Commissioners wherein it was simply alleged that H. H. Darks claimed some right, title or interest in and to the above described premises and that whatever right, title or interest the defendant may have is inferior and junior to the right, title and lien of this plaintiff. These are general allegations and bear no implication that the interest claimed by Darks was acquired by him from parties who had acquired such interest prior to the date the Commissioners took a mortgage upon the land.

The Commissioners then prayed that the defendant be required to come into court and set up whatever right, title or claim they had in the premises and that the Commissioners have judgment against the defendant foreclosing the lien and barring all defendants from any interest in the property.

Plaintiffs contend that the decision in the Ciesler case above cited was the law when judgment foreclosing the Commissioners' mortgage was entered December 19, 1932. The Ciesler case was decided in 1940. Defendants claim that the law as announced in De Watteville. v. Sims, 44 Okl. 708, 146 P. 224, decided in 1915, was in effect when the Commissioners obtained their foreclosure judgment December 19, 1932. In the De Watteville case the rule relative to mortgage foreclosures is announced in the first and second paragraphs of the syllabus:

"In the absence of exceptional facts which the plaintiff should allege, the only proper parties defendant in a suit to foreclose a mortgage are the mortgagor and those who have an inferior interest in the mortgaged property acquired from him subsequent to the execution of the mortgage.

"A petition which alleges that certain defendants in a suit to foreclose a mortgage are parties who have acquired by various conveyances, and who are asserting ownership of some subsequent, subjective, and inferior interest in the mortgaged property, the exact nature of which is to the plaintiff unknown, without demanding a disclosure of such interest or stating any other ground for including such defendants in the action, will be con-

strued, as against the petitioner, as alleging that such interest is a species of title extending to all the property and derived from the mortgagor since the execution of the mortgage."

 These rules of law were later confirmed in State ex rel. Com'rs of Land Office v. Reynolds, 201 Okl. 400, 206 P.2d 184, 185, and are now in effect, the rule being announced in the first paragraph of the syllabus:

"In an action to foreclose a real estate mortgage, if plaintiff desires to bring within the jurisdiction of the court and litigate an outstanding title or interest which on the face of the record is a valid paramount title, the plaintiff should allege the facts upon which he seeks to have his mortgage decreed to be a lien on such apparent paramount title."

The record further discloses that after H. H. Darks called the attention of the Commissioners to the fact that his one-half interest in the minerals had accrued prior to the execution of the mortgage sought to be foreclosed, one of the then attorneys for the Commissioners on December 9, 1931, wrote H. H. Darks as follows:

"I have yours of the 8th, relative to your interest in the Herman W. Hays land in Custer County, Oklahoma and note what you say. I have examined the abstract in this case and find that your interest predates our mortgage so we will dismiss as to you when we take judgment."

Through oversight or negligence this agreement was not kept and the Commissioners took judgment foreclosing their lien against H. H. Darks and all other defendants. When Darks discovered this error, he filed suit in the District Court to quiet his title to one-half of the minerals. The Commissioners answered and upon trial the court rendered judgment in favor of H. H. Darks as to a one-half interest in the minerals. No appeal was taken from this judgment rendered July 19, 1948.

It was defended on the ground that it was a collateral attack upon the foreclosure judgment of December 19, 1932.

We find no merit in plaintiffs' proposition (B) to the effect that the Commissioners had the right and authority to determine what mineral interest they owned in the land and that when they decided that they owned all of the minerals and proceeded to sell such interest in part, their decision was final and that the sale based thereon was valid.

 The Commissioners do have a broad general authority to determine what interest they desire to sell, provided they retain an undivided one-half interest in the minerals, but where their decision is clearly erroneous, as in this case, it cannot and should not in justice be permitted to deprive one of his title to an interest acquired prior to any interest held by the Commissioners.

Plaintiffs claim error in the judgment against them in favor of H. L. Hunt for sums paid them by Hunt on oil and gas lease given by plaintiffs after their purchase of the land from the Commissioners. The following paragraph of the stipulation of the parties is sufficient to dispose of this question contrary to the claims of the Penners:

"It is further stipulated that on February 18, 1946, Katherine Penner and her husband, plaintiffs herein, gave an oil and gas lease to defendant H. L. Hunt, a copy of which is attached to defendant's answer and cross petition and that under and by the terms of said oil and gas lease a total of $760.00 has been paid in delayed rentals and bonuses."

 There is no denial by the plaintiffs that the money paid by Hunt was not received by them. We think a fair interpretation of the above portion of the stipulation is sufficient to sustain the contention of H. L. Hunt as to this matter. It is true that the Penners acted in good faith in believing that they owned the one-half of the minerals when they leased

to H. L. Hunt, but it developed that they owned no interest whatever in the minerals and their warranty clause in the oil and gas lease clearly makes them responsible to the lessee for whatever he paid for the lease and in delay rentals. The trial court expressly found that Hunt paid this money and that the Penners received it.

It is urged that the Commissioners should be held estopped under the circumstances existing here from denying the plaintiffs complete relief from the unfortunate position in which they are placed by the errors of the Commissioners in failing to correct their admitted mistake in taking foreclosure judgment against a clearly superior outstanding interest in one-half of the minerals and in offering for sale and undertaking to sell such interest to the plaintiffs.

▇▇▇ Assuming, as we have herein held, that the Commissioners did not have authority to foreclose upon and offer for sale and sell the one-half interest in the minerals owned by H. H. Darks, they were acting beyond their authority and contrary to their agreement and promise to H. H. Darks. Under such circumstances their acts in this respect were ultra vires and estoppel does not apply. In the recent case of State ex rel. Com'rs of Land Office v. Phillips Petroleum Co., Okl., 258 P.2d 1193, 1199, this Court said:

"It is claimed that the Commissioners are estopped from denying the claim of Phillips. It must be admitted that the offer to sell as expressed by the Notice of Sale included no interest in the minerals and that the erroneous Certificate of Purchase and Patent were the result of error and their issuance beyond the authority of the Commissioners who were bound by the rules and regulations prescribed by the Legislature.

"The doctrine of estoppel is applicable to the Commissioners where they act within their authority, but where they act beyond the authority granted them their acts were ultra vires and estoppel does not apply. The rule is correctly stated in Murphy v. State, 65 Ariz. 338, 181 P.2d 336, 337, where the Supreme Court of Arizona said:

" '(The) principle of estoppel does not apply to unauthorized or ultra vires acts of state officials regardless of capacity in which state acts, whether proprietary or governmental.' "

The plea of estoppel is not applicable here. The State, acting through the Commissioners, can sell only such interest as it has in property so long as it retains the required interest in the minerals and does not warrant title to property offered for sale. Since the State owned only an undivided one-half interest in the minerals and was compelled to reserve a one-half interest, it could convey only the surface rights to the Penners.

The record before us discloses that the ownership of one-half the minerals by H. H. Darks was clearly established prior to execution of the mortgage foreclosed by the Commissioners. The deed to Darks' grantor was of record as well as the deed to Darks. They constituted constructive notice to the Commissioners that their mortgagors owned only one-half of the minerals. The Commissioners, through oversight or mistake, could not acquire title to an interest to which they were clearly not entitled. H. H. Darks sued the Commissioners to correct their errors and quiet his title. He obtained judgment as prayed for in 1948. The only defense of the Commissioners was that Darks was making a collateral attack on their judgment. He prevailed and the Commissioners did not appeal.

The Commissioners state in their brief that they offered to reimburse plaintiffs for all loss suffered by them if they would pray for rescission, but that they declined. It is the duty of the State and the intention of the Commissioners to deal fairly with all its citizens, and such offer is highly commendable where admitted errors by employees of the Commissioners result

in loss to those who deal with the Commissioners.

A careful review of all of the facts and circumstances before us convinces us that the judgment of the trial court is not against the clear weight of the evidence but is supported by competent evidence. The judgment is therefore affirmed.

JOHNSON, C. J., and DAVISON, BLACKBIRD and HUNT, JJ., concur.

WILLIAMS, V. C. J., concurs by reason of stare decisis.

CORN and WELCH, JJ., dissent.